Martin Espinosa **RODRIGUEZ**,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–95–00369–CR.

Court of Appeals of Texas,
San Antonio.

June 28, 1996.

Albert L. Rodriguez, Law Offices of Albert L. Rodriguez, San Antonio, for Appellant.

Jim Vollers, Austin, for Appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

HARDBERGER, Justice.

This case revisits the fundamental right of a criminal defendant to confront the witnesses against him. It didn't happen in this case. We reverse and remand.

Martin Espinosa Rodriguez was found guilty, by the jury, of aggravated assault, committed with a deadly weapon. Rodriguez's story was that he wasn't shooting at anyone. He was just shooting into the air: a kind of South Texas ode de joy. No harm intended. The jury didn't buy it. Rather they believed the state's version, which was that Rodriguez very much intended to harm the complainant, Joe Angel Cruz.

██ One of the reasons the jury could have felt that Rodriguez's intentions were homicidal, rather than celebratorial, was the account of an eyewitness, Ruben Nuncio. Nuncio's testimony was that Cruz was very much an innocent victim, and his aggressor, whose name he did not know, but in context was most definitely Rodriguez among others, was bent on the destruction of Cruz. He testified that these "guys" were (1) yelling and cursing Cruz, (2) that they came on Cruz's property and tried to hit Cruz with a pistol, (3) then they tried to stab Cruz with a knife, (4) when Cruz started running for his life down the street they started shooting at him, and (5) when they ran out of bullets they went into their home, got more bullets, and started shooting at Cruz once more. This is all persuasive evidence to support a finding of guilt of an aggravated assault.

The problem with the testimony is that it all came into evidence in the form of a written statement given by Nuncio to the police in a pre-trial investigation. Nuncio never came near the courthouse. This statement was placed into evidence by the state, over the objection of the defendant, and went to the jury along with other written statements. The defendant was thus denied the Constitu-

tional right of confrontation and cross-examination. Nuncio would have been a ripe target, too, as another of the state's witnesses said that Nuncio had gotten him to lie.

The Sixth Amendment's guarantee of the right of the accused to confront the witnesses against him is a fundamental right and is made obligatory on the states by the Fourteenth Amendment. *See Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Sixth Amendment states, in part, "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial ... and to be confronted with the witnesses against him." U.S. CONST. Amend. VI. The Texas Constitution has a similar provision, which states in part: "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury ... and shall be confronted with the witnesses against him." TEX. CONST. Art. I, § 10.

*Pointer, supra,* is similar to the case at bar. Pointer was on trial for robbery. In the process of that trial the state had entered in evidence against him a transcript of a witness' testimony at a preliminary hearing, when Pointer was not represented by counsel and had no opportunity to cross-examine the witness. This was held by the U.S. Supreme Court to be reversible error because the constitutional right to confrontation and cross-examination had been denied.

> "We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment.
>
> It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case.

*Pointer,* 380 U.S. at 403–404, 85 S.Ct. at 1068.

The statement of another witness, Gilbert Landrove, was also put into evidence. But Landrove also testified, and therefore was subject to confrontation and cross-examination. His statement, in some respects corroborated Nuncio's, and in some respects, did not. In cross-examination, he admitted that Nuncio had told him to put things in his written statements that were not true.

During his testimony, Landrove retracted the part of his statement dealing with seeing one of the men try to hit Cruz. He also retracted the part about seeing the man firing the gun at Cruz. Instead, Landrove testified at trial that when Rodriguez started coming across the street he told Cruz to "get your kids away, we just want you." Cruz told the kids to run. At that point Landrove said he ran behind a trailer and hid and did not see the ensuing confrontation. However, Landrove testified that he heard gunshots. He said he did not actually see anyone fire the shots. Finally, Landrove testified that his cousin Nuncio had told him what to write down on the report even when it wasn't true.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him." *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). The primary purpose of confrontation is to *"secure for the opponent the opportunity of cross-examination."* *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940) (emphasis in the original)). The right to confrontation is closely related to the concerns underlying the hearsay rule, but the two do not completely overlap. *See, e.g., United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

■ "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). The admission of Nuncio's statement into evidence fails on both counts. Rodriguez never saw Nuncio in court and never had the opportunity to cross-examine him. Cross-examination of Nuncio

was especially important because his statement had already been impeached, to some extent, by Landrove's testimony. Furthermore, Landrove had accused Nuncio of persuading him to lie for Cruz. Therefore, cross-examination of Nuncio was critical. Nuncio's veracity had been put into question by Landrove as had Nuncio's possible bias or predisposition to lie on behalf of Cruz. Certainly, Rodriguez was entitled to confront Nuncio on these issues. We hold that it was error for the trial court to admit Nuncio's statement without giving Rodriguez the chance to cross-examine him.

The state argues that this point was waived because the "crux" of Nuncio's statement came before the jury without objection. The state points to that portion of Landrove's trial testimony wherein he admits that Nuncio told him what to write down. Nuncio told Landrove what to write down, the state says, so Nuncio's testimony is about the same as that of Landrove. As the defendant did not object to Landrove, the evidence is already before the jury and therefore is only cumulative according to the state. We do not agree.

It is true that if a fact which has been objected to as hearsay is sufficiently proven by other competent and unobjected to evidence, the admission of the hearsay is properly deemed harmless and does not constitute reversible error. *Livingston v. State*, 739 S.W.2d 311, 333 (Tex.Crim.App.1987); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim.App.1986); *Harris v. State*, 866 S.W.2d 316, 323-24 (Tex.App.—San Antonio 1993, pet. ref'd). However, the error in this case amounts to more than just the admission of inadmissible hearsay. It involves the denial of a constitutional right. Therefore, this general rule of law, which concerns the harmful effect of cumulative evidence, is considered as one factor, not alone dispositive, in deciding whether the denial of cross-examination is harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Young v. State*, 891 S.W.2d 945 (Tex.Crim.App.1994); *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App. 1991).

In *Shelby*, the Court of Criminal Appeals set forth the proper harm analysis:

First, assume that the damaging potential of the cross-examination were fully realized. *Van Arsdall*, [475 U.S. at 684–85] 106 S.Ct. at 1438. Second, with that assumption in mind, review the error in connection with the following factors:

1) The importance of the witness' testimony in the prosecutions's case;

2) Whether the testimony was cumulative;

3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

4) The extent of cross-examination otherwise permitted; and,

5) The overall strength of the prosecution's case.

*Van Arsdall*, [475 U.S. at 684–85] 106 S.Ct. at 1438.

Finally, in light of the first two prongs, determine if the error was harmless beyond a reasonable doubt.

*Shelby*, 819 S.W.2d at 547.

For purposes of this case we must assume that the cross-examination of Nuncio would have proven that he was a liar and that he had fabricated a large part of his statement in order to help Cruz. This case was largely a swearing match between the complainant, Cruz, and the appellant, Rodriguez. Cruz alleged that Rodriguez and Pascual started cussing at him for no reason and then came over and started firing a gun at him. Rodriguez testified that there was bad blood between Cruz and Pascual and that an argument erupted and he fired his gun into the air to stop the argument. The bad blood grew out of alleged unwanted sexual advances by Cruz on Pascual's wife, the killing of each other's dogs, and Cruz's alleged assault on Pascual in an effort to exorcise demons. Nuncio's primary purpose was to corroborate Cruz's version of the events. That was also Landrove's role in the trial. To some extent, Nuncio's testimony was cumulative.

As the Defendant and the state's complaining witness had different versions of what happened, it was obviously helpful to the

state to put on as many witnesses as they could to contradict the defendant's version. It can be argued that this is cumulative, and therefore doesn't make any difference whether it is in evidence or not, but it obviously does make a difference. That's why the state wanted to put it in, albeit in an inadmissible form.

> "To exclude evidence under Rule 403, the trial court must conduct a balancing test and only when the balance weighs significantly on the side of judicial efficiency may relevant evidence be excluded as cumulative.... The test is not merely whether the evidence to be adduced from the two witnesses is similar, but also whether the excluded testimony would have added substantial weight to the offering parties' case."

*Sims v. Brackett,* 885 S.W.2d 450, 454 (Tex. App.—Corpus Christi 1994). For similar language see *Bohmfalk v. Linwood,* 742 S.W.2d 518, 521 (Tex.App.—Dallas 1987). These are civil cases interpreting Rule of Evidence 403, which is the same in both the civil and criminal Rules of Evidence. The converse to the cases holding that just because evidence is cumulative does not mean it is objectionable is that illegal evidence that is admitted that "adds substantial weight to the offering parties' case" may be reversible error. We think it was in this case.

Landrove had already renounced the part of his statement where he said he saw Rodriguez shooting at Cruz and said Nuncio persuaded him to lie about that. If Nuncio had admitted that his statement was a lie, it would have cast doubt on the truth of Cruz's statement. The jury had Rodriguez' version of the facts with no corroboration and Cruz's version with Nuncio's corroboration. Nuncio's testimony was material because it went to prove a critical element of the state's case—Rodriguez's intent to cause Cruz bodily harm. Therefore, Nuncio's statement played an important role in the trial. In effect, it tipped the scale in the state's favor.

We must assume that the state also believed Nuncio's statement was important for these reasons. The state never offered to withdraw the statement although it had an opportunity to do so when Rodriguez re-newed his initial objection at the end of the trial. It cannot reasonably be said that the trial court's error in admitting the written statement without giving Rodriguez the chance to cross-examine the witness was harmless *beyond a reasonable doubt.* We sustain Rodriguez' first point of error.

Given our disposition of the first point of error there is no need to address the second and third points. We reverse and remand for a new trial.

DUNCAN, J., concurs in the judgment only.