Charles Young v. Patrick, et al. (multiple appellees)















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-310-CV

Â Â Â Â Â CHARLES YOUNG,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â ANTHONY PATRICK, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 30,771
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Appellant Charles Young, a prison inmate, appeals by writ of error from an order of the trial
court dismissing his pro se informa pauperis lawsuit.
Â Â Â Â Â Â Appellant filed a suit pro se informa pauperis in February 1997 against Appellees, Anthony
Patrick, Kenneth Green, T.J. McKinney, Raul Mata, Michael Starkey, Kelvin Clark, Jesse Shuck,
Anthony Banta, Naniah Colbert, McLennedez Acosta, Luann Tippet Bennes, E. H. Oliver, Saudro
McBee, William Northrup, and Louis Gibson. Appellees are all wardens, guards, counselors, or
health-care providers at the Hughes Unit of the Texas Department of Criminal JusticeâInstitutional
Division at Gatesville. Appellant sued Appellees in both their official and individual capacities
alleging: (1) violation of his civil and constitutional rights, (2) brutal assault, (3) false arrest and
use of excessive force, (4) denial of medical care, (5) denial of life's necessities of 3 meals per
day, and (6) conspiracy.
Â Â Â Â Â Â Appellant sought: (1) compensatory damages of $1,000,000, (2) punitive damages of
$2,000,000, (3) exemplary damages of $100,000, and (4) actual damages of $2,000,000.
Â Â Â Â Â Â On May 14, 1997, the trial court dismissed Appellant's cause of action pursuant to Chapter
14 of the Texas Practices & Remedies Code finding that it was frivolous and malicious because
the claim stated therein had no "arguable basis in law or fact" and "failed to state a cause of
action."
Â Â Â Â Â Â Appellant caused a transcript to be filed in this court on December 4, 1997, and filed his
petition for writ of error in this court on December 15, 1997.
Â Â Â Â Â Â Appellant asserts 18 points of error requesting this court to reverse the order dismissing his
cause of action and remand to the trial court for trial. Appellant further asks this court to appoint
"an expert attorney" to advise and represent him in his action.
Â Â Â Â Â Â Appellant filed a pauper's affidavit pursuant to Rule 145, Texas Rules of Civil Procedure. 
Chapter 14, Â§ 14.003, Texas Civil Practice & Remedies Code, applies to suits brought by an
inmate who has filed an affidavit of inability to pay costs. Section 14.003(a) allows a court to
dismiss a suit before or after process is served if the court finds (1) the allegation of poverty is
false; (2) the claim is frivolous or malicious; or (3) the inmate filed an affidavit or unsworn
declaration required by Chapter 14 that the inmate knew was false. In determining whether a
claim is frivolous or malicious, the court may consider whether: (1) the claim's realistic chance
of success is slight; (2) the claim has no arguable basis in law or fact; (3) it is clear the party
cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous
claim filed by the inmate.
Â Â Â Â Â Â Section 14.004 requires the inmate to file a separate affidavit or declaration identifying each
prior suit brought by the inmate, specifying the operative facts, the case name, the case number,
the court in which it was brought, the names of the parties, and the result of the suit. Â Â Â Our
review of a dismissal under Chapter 14 is controlled by the abuse of discretion standard. Abuse
of discretion is determined by whether the court acted without reference to any guiding principles. 
Craddock v. Sunshine Bus Lines, 133 S.W.2d 124 (Tex. 1939).
Â Â Â Â Â Â Appellant's petition was not accompanied by the affidavit relating to previous filings required
by Â§ 14.004.
Â Â Â Â Â Â Chapter 14 was designed to control the flood of frivolous lawsuits being filed by prison
inmates, consuming valuable judicial resources with little offsetting benefit. Hickson v. Moya, et
al., 926 S.W.2d 379 (Tex. App.âWaco 1996, no writ).
Â Â Â Â Â Â The supplemental filing required by Â§ 14.004 is designed to assist the court in making
determinations the Legislature called upon it to make; thus it is an essential part of the process by
which the court reviews inmate cases.
Â Â Â Â Â Â Because the court can dismiss where an inmate files a false affidavit or declaration, that same
policy allows the court to dismiss a suit filed without the affidavit or declaration. Hickson, supra. 
The trial court did not abuse its discretion in dismissing Appellant's suit.
Â 
Â Â Â Â Â Â The order of the trial court is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â FRANK G. McDONALD
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice (Retired)

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance and
Â Â Â Â Â Â Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed June 10, 1998
Do not publish




 summary judgment.


Â 


 Noticed
 the parties the clerks record was filed.


Â 


 Noticed
 the parties the reporterÂs record had not been filed.


Â 


 Noticed
 the parties, again, that the reporterÂs record had not been filed.


Â 


 Noticed
 the parties that the reporterÂs record was filed.


Â 


 Noticed
 the parties of the receipt of a defective brief from appellant.


Â 

Â Â Â Â  In the above litany, ÂpartiesÂ
is in reference to only AvilaÂs and the ChristophersÂ counsel receiving
notice.Â  None of the medical creditors received any of these notices.Â  As far
as this Court was concerned, they were not parties to this appeal.Â  

Â Â Â Â  At this juncture, it is
appropriate to note that normally the docketing statement would have provided
the necessary information to determine who Avila intended to be appellees.Â  A
docketing statement was never filed.Â  And the Court failed to follow up on its
demand sent to Avila that one be filed.Â  Justice Vance has characterized the
docketing statement as only having administrative purposes.Â  Hensley v. W.M.
Specialty Mortgage LLC, No. 10-05-00332-CV, 2005 Tex. App. LEXIS 9614 (Tex. App.ÂWaco Nov. 16, 2005, no pet. h.)(Vance, J., concurring note).Â  I disagree.Â 
Determining who is a party to an appeal is substantive.Â  We have used the
docketing statement in the past to determine who was, or was not, intended as a
party to an appeal.Â  Polys v. Daney, No. 10-98-00285-CV (Tex. App.ÂWaco Nov. 25, 1998, no pet.)(not designated for publication).Â  The docketing
statement provides substantive information about who the appeal is being
pursued by and against.Â  It can provide outcome determinative information.Â 
That is substantive Â not administrative.

Â Â Â Â  Finally, over six months after
the amended notice of appeal was filed, when the amended brief was filed, it
appeared that maybe someone else needed to be notified of something because the
style on the brief was as follows:

Efren Avila,

Appellant,

v.

Lone Star Radiology, Accident & Injury, Open

Air MRI, Family Care Pharmacy, Parkland

Hospital, and Pedro Nosnik, M.D.,

Appellees

Â 

Â Â Â Â Â Â Â Â Â  But the certificate of service
indicates that it was served only on ÂrepresentativesÂ of Parkland Hospital, Dr. Nosnik, and Accident & Injury.Â  This means Lone Star Radiology, Open Air MRI,
and Family Care Pharmacy were not served with the brief and it was not possible
to determine from the brief if the persons served were attorneys.Â  The list of
ÂParties and CounselÂ did not identify the Christophers.Â  See Tex. R. App. P. 38.1(a).Â  But other
errors in the listing of ÂParties and CounselÂ were readily apparent.Â  Dr.
Tamara Uptigrove was identified as counsel for Lone Star Radiology.Â  Dr.
Kenneth Lustik was identified as counsel for Open Air MRI.Â  No counsel
or representative was identified for Family Care Pharmacy, and Derrick Ford was
identified as counsel for Parkland Hospital.Â  But, in apparent response to this
listing and identification of Âappellees,Â the Court simply ÂaddedÂ the
following persons to our case management system on June 15, 2004, all as
appellees:

Derrick Ford Â Pro Se

Bob Kubicki Â Pro Se

Lone Star Radiology

Dr. Kenneth Lustik Â Pro Se

Family Care Pharmacy Â Pro Se

Karen Powell Â Pro Se

Dr. Tamara Uptigrove Â Pro Se

Â 

Â Â Â Â Â Â Â Â Â  The source of this information for
these ÂnewÂ appellees appears to be solely from the style and the obviously defective
Âidentity of the Parties and CounselÂ in appellantÂs corrected brief.

Let the Games Begin

Â Â Â Â Â Â Â Â Â  So without any prior involvement in
the appeal, on June 24, 2004 we notified the ÂnewÂ appellees and
representatives that their brief had been due on June 7, 2004 and neither a brief
nor a motion to extend had been filed.Â  I am not surprised that no brief was
filed by persons, entities, or representatives that had no idea that an appeal
was proceeding without them.Â  Until June 24, 2004, they had no reason to know
they were parties in a case, much less that they were appellees in an appeal.

Â Â Â Â Â Â Â Â Â  The clerk received a phone call.Â  The
phone call was followed by a letter.Â  The full text of the letter follows:

Dear Ms. Roessler:

Â 

Â Â Â Â Â Â Â Â Â  As we discussed following my receipt
of your June 24, 2004 letter regarding the above-referenced matter, I have no
record of this matter except for correspondence from Mr. GarciaÂs office.Â  That
lack of documentation leads me to believe that I made no appearance at the
trial court.Â  Furthermore, had I made such an appearance, I would have also
made an appearance on behalf of Lone Star Radiology and Open Air MRI.

Â 

Â Â Â Â Â Â Â Â Â  In any event, as we discussed and in
light of the above, I represent to the court that Appellees Accident &
Injury, Lone Star Radiology, and Open Air MRI will not be submitting briefs in
this matter.

Â 

Â Â Â Â Â Â Â Â Â  By copy of this letter all counsel of
record are being served.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Very
truly yours,

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Robert
Kubicki,

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  General
Counsel

Â 

Â Â Â Â Â Â Â Â Â  As an aside:Â  Can a person make an
appearance in an appellate court by having a representative graciously respond
to a clerkÂs notice that a brief is late when there was no prior involvement in
the appeal by the person?

Â Â Â Â Â Â Â Â Â  The Court thereafter notified
everybody listed in our case management system, including the Christophers,
that the case would be submitted without oral argument.Â  An opinion, a
dissenting opinion, and judgment were issued.Â  Nothing was said by anyone.Â  No
motion for rehearing.Â  No petition for review.

Â Â Â Â Â Â Â Â Â  The mandate issued.Â  

Â Â Â Â Â Â Â Â Â  Seven days after the mandate issued, counsel
for the Christophers responded by letter that they were not parties to the
appeal and, therefore, costs should not be assessed against them in the
judgment.Â  The only person or entity provided a copy of the letter, other than
the Court, was AvilaÂs counsel.Â  So the medical creditors were not copied or
served with the document and thus have no idea this could be coming.Â  They have
not been asked to address any of these issues; nobody has.

Â Â Â Â Â Â Â Â Â  They should not have to because they
are not parties to this appeal.

Â Â Â Â Â Â Â Â Â  So under the guise of a clerical
error, we are now revising the ÂstyleÂ of the appeal and rendering a judgment
assessing appellate costs against persons who had no notice until the eleventh
hour that they were allegedly parties to an appeal involving their rights.Â  The
final judgment rendered by a majority of this Court did not assess costs
against them.Â  But surprise, now you are not only parties to an appeal that you
never had a legitimate way to participate in, but you lost and now you owe for
costs!Â  Welcome to the Tenth Court of Appeals Â so glad we could be of service
to you.

One Step Back

Â Â Â Â Â Â Â Â Â  Before anyone accepts this as an
appropriate fix, let us all take one step back.Â  Is this actually a clerical
error that we can ÂfixÂ by withdrawing an opinion and judgment and recalling a
mandate?Â  I think not.

Clerical vs. Judicial
Errors

Â Â Â Â Â Â Â Â Â  Most of the cases about correcting
clerical errors arise from modification of trial court judgments.Â  In this
regard, the following discussion is typical.

Â Â  A clerical error is a discrepancy between the
entry of a judgment in the record and the judgment that was actually rendered.Â 
See Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Butler
v. ContÂl Airlines, Inc., 31 S.W.3d 642, 647 (Tex. App.ÂHouston [1st Dist.]
2000, pet. denied).Â  A clerical error does not result from judicial reasoning,
evidence or determination.Â  Andrews, 702 S.W.2d at 585.Â  Conversely, a
judicial error arises from a mistake of law or fact that requires judicial
reasoning to correct.Â  Butler, 31 S.W.3d at 647.Â  A judicial error
occurs in the rendering, rather than the entering of the judgment.Â  Escobar,
711 S.W.2d at 231.

Â 

Â Â  A
trial court can only correct nunc pro tunc the entry of a final written
judgment that incorrectly states the judgment actually rendered.Â  Id. at 231-32.Â  Even if the trial court incorrectly renders judgment, the trial
court cannot alter a written judgment that precisely reflects the incorrect
rendition.Â  Id. at 232.Â  If the trial court corrects a judicial error
after its plenary power has expired, the judgment is void.Â  Dikeman v. Snell,
490 S.W.2d 183, 186 (Tex. 1973).Â  When deciding whether an error in a judgment
is clerical or judicial, the court must look to the judgment actually rendered
and not the judgment that should have been rendered.Â  Escobar, 711
S.W.2d at 231.Â  Whether an error is judicial or clerical is a question of law.Â 
 Id.

Â 

Â Â  It is well settled that the rendition of a
judgment occurs when the trial courtÂs decision is officially announced either
by a signed memorandum filed with the clerk of the court or orally in open
court.Â  In re Fuselier, 56 S.W.3d 265, 268 (Tex. App.ÂHouston [1st
Dist.] 2001, orig. proceeding).Â  Here, neither party disputes that the trial
courtÂs August 2002 letter was the trial courtÂs rendering of judgment.

Â 

Â Â  In order for a judgment nunc pro tunc to be
properly granted, the evidence must be clear and convincing that a clerical
error was made.Â  Riner v. Briargrove Park Prop. Owners, Inc., 976 S.W.2d
680, 683 (Tex. App.ÂHouston [1st Dist.] 1997, no writ); see Broussard,
112 S.W.3d at 833.Â  Evidence may be from oral testimony of witnesses, written
documents, previous judgments, docket entries, or the trial judgeÂs personal
recollection.Â  Riner, 976 S.W.2d at 683.Â  If the trial court relies on
its own personal recollection of the facts, we presume that the courtÂs
recollection supports the finding of clerical error.Â  Id.

Â 

Barton v. Gillespie, No. 01-04-00890-CV, 2005 Tex. App. LEXIS 5129,
*11-13 (Tex. App.ÂHouston [1st Dist.] June 30, 2005, no pet.).

And another example:

Â 

Â Â  Once a trial court loses plenary power over a
judgment, it can correct clerical, but not judicial, errors by judgment nunc
pro tunc.Â  Escobar v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986); see
also Tex. R. Civ. P. 316.Â  A
clerical error is an error in the entry of a judgment; it is a mistake or
omission that prevents the judgment as entered from accurately reflecting the
judgment that was rendered.Â  Escobar, 711 S.W.2d at 231; Univ.
Underwriters Ins. Co. v. Ferguson, 471 S.W.2d 28, 29-30 (Tex. 1971); Butler v. ContÂl Airlines, Inc., 31 S.W.3d 642, 647 (Tex. App.ÂHouston [1st
Dist.] 2000, pet. denied.Â  In contrast, a judicial error arises from a mistake
of law or fact that results from judicial reasoning or determination.Â  Andrews
v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); LaGoye v. Victoria Wood Condo.
AssÂn., 112 S.W.3d 777, 783 (Tex. App.ÂHouston [14th Dist.] 2003, no
pet.).Â  A judicial error occurs in the rendition, as opposed to the entry, of a
judgment. Â Escobar, 711 S.W.2d at 311.

Â 

Â Â  Whether the trial court previously rendered
judgment and the content of the judgment are fact questions for the trial
court, but whether an error in the judgment is judicial or clerical is a
question of law.Â  Id. at 232; Butler, 31 S.W.3d at 647.Â  Where,
as here, no findings of fact or conclusions of law were filed, the trial
courtÂs judgment implies all findings of fact necessary to support it.Â  Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).Â  Because a record was
made of the nunc pro tunc hearing, however, these implied findings are not
conclusive, and Wittau may challenge them by raising both legal and factual
sufficiency of the evidence issues.Â  Roberson v. Robinson, 768 S.W.2d
280, 281 (Tex. 1989).Â  We review the trial courtÂs implied factual
determinations under traditional legal and factual sufficiency standards, but
are not bound by the trial courtÂs legal determination regarding the nature of
any error in the original judgment.Â  Roberson, 768 S.W.2d at 281; Escobar,
711 S.W.2d at 232; Finlay v. Jones, 435 S.W.2d 136, 138 (Tex. 1968) (orig. proceeding).

Â 

Wittau v. Storie, 145 S.W.3d 732, 735-736 (Tex. App.ÂFort Worth
2004, no pet.).

And one of the better summaries of how to
distinguish clerical from judicial error is the following excerpt.

Â Â  A clerical error results from inaccurately
recording the decision of the court.Â  Escobar v. Escobar, 711 S.W.2d
230, 231 (Tex. 1986); Dickens, 957 S.W.2d at 659.Â  To be clerical in
nature, the error must be one that is not the result of judicial reasoning,
evidence, or determination.Â  Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Gutierrez v. Gutierrez, 86 S.W.3d 721, 726 (Tex. App.ÂEl Paso 2002, no
pet.).Â  Correction of a clerical error does not effect a substantive change in
the courtÂs order.Â  Dickens, 957 S.W.2d at 659.Â  On the other hand, a
judicial error results from judicial reasoning or determination.Â  Id.Â  Substantive change results from correction of a judicial error.Â  For instance,
an attempt to impose a specific obligation to pay where no such obligation had
previously existed is an unlawful substantive change, not a mere clarification
or correction of a clerical error.Â  McGehee v. Epley, 661 S.W.2d 924,
925-26 (Tex. 1983); In re Broussard, 112 S.W.3d 827, 833-34 (Tex. App.ÂHouston [14th Dist.] 2003, orig. proceeding).

Â 

Â Â  The salient distinction between ÂclericalÂ
and ÂjudicialÂ errors lies in the exercise of the judgmental offices of the
court.Â  Andrews, 702 S.W.2d at 585.Â  In Andrews, a probate court
order allowed a sale of estate property in accordance with a real estate sales
contract, which included a grant of an easement.Â  Id.Â  The recorded deed
failed to mention the easement, however.Â  Id.Â  The administrators
obtained from the probate court an order nunc pro tunc correcting the deed to
reflect the conveyance of the easement.Â  Id.Â  After the court of appeals
reversed the probate courtÂs decision, the Texas Supreme Court determined the
correction was proper and affirmed the probate CourtÂs correction.Â  Id. at 586.Â  The court reasoned, since the entry of the order nunc pro tunc would
not involve additional judicial reasoning, the error at issue was clerical in
nature and the probate court could correct the deed to properly reflect the
judgment originally rendered.Â  Id.

Â 

Â Â  To further illustrate the well-established
rules regarding what qualifies as a judicial error, we look to the 1891 case of
Missouri Pac. Ry. Co. v. Haynes, in which respondents sued the railway
company for the value of eighty-seven bales of cotton, weighing 43,064 pounds,
destroyed by fire negligently caused by the company while the cotton was in its
possession.Â  82 Tex. 448, 18 S.W. 605 (1891).Â  There was no controversy over
the number of bales or their weight, and at the trial the railway company did
not deny that eighty-seven bales were burned.Â  Id.Â  However, in its
calculation of the gross weight of the cotton destroyed, the trial court
omitted the bill of lading for six bales of cotton.Â  Id.Â  Nearly six
months after judgment was rendered, respondents moved the trial court to
correct the judgment to include the value of the six bales.Â  Id.Â  The
trial judge testified that he found for respondents the weight of the entire
eighty-seven bales, that he intended to give judgment for that amount, and that
he thought he had done so until the motion to correct the judgment was filed.Â  Id.Â  The trial court granted the motion.Â  Id.Â  The Texas Supreme Court
disagreed, concluding that respondentsÂ remedy, if any, would have been by a
timely motion for new trial or by appeal rather than a motion to reform a final
judgment.Â  Id.Â  The failure of the court to consider and compute the
value of the six bales of cotton was a judicial error, not a clerical error.Â 
It was a failure to consider evidence in the case and represented an erroneous
judgment on the facts.Â  Id.

Â 

Â Â  Similar determinations can be found in cases
involving child support orders and modifications.Â  For instance, when, after
its plenary power expired, the trial court entered a judgment that ordered a
father to pay $38.00 per month in reimbursement of his childÂs healthcare
insurance premiums and the original judgment did not impose such an obligation,
the corrected judgment was ineffective as a judgment nunc pro tunc and was
void.Â  Broussard, 112 S.W.3d at 833-34.Â  The attempted correction did
not involve a mere clerical error since it imposed an obligation where
previously there had been none.Â  Id.

Â 

In re Marriage of Ward, 137 S.W.3d 910, 913-914 (Tex. App.ÂTexarkana
2004, no pet.).

Â Â Â Â Â Â Â Â Â  When this reasoning is applied to this
appellate case, the error the majority is trying to correct is judicial, not
clerical.Â  The corrected judgment imposes court costs on entirely different
entities than was imposed by the original judgment.Â  The original judgment was
not the result of a clerical error.Â  Thus, the ÂCorrected OpinionÂ and judgment
are void.

Â Â Â Â Â Â Â Â Â  And for the majority to argue that
they did not intend the judgment to be entered against the Christophers and
Williams does not yield a flattering picture of the conduct of their offices.Â 
In the original dissenting opinion, I directed the readersÂ attention to:


 the
 discrepancy between the style of the case on the opinion and the style
 used on appellantÂs brief;


Â 


 the
 fact the medical creditors had never been served in the case below;


Â 


 the
 only judgment to review among the parties to the case below was the
 settlement/ dismissal with the defendants below; and


Â 


 Âthe
 only thing that is clear is that B.G. Williams is NOT a party to this
 appeal.Â  This appeal is from the claims of Avila against Andy and Daniel
 Christopher which were severed and settled.Â  The only notice of appeal in
 the record [actually both notices of appeal] gives the original style of
 the case ÂÂ


Â 

Avila v. Christopher, No.
10-04-00021-CV, 2005 Tex. App. LEXIS 5038, *5-11 (Tex. App.ÂWaco June 29, 2005,
no pet.)(Gray, C.J., dissenting).

Â Â Â Â  In the face of these comments
in the dissenting opinion, the majority issued an opinion identifying the
Christophers and Williams as the appellees and a judgment awarding costs
against those appellees.Â  Now they say the original opinion and judgment were
the result of a clerical error.

Â Â Â Â  So what else could all this
mean?Â  Of course it could mean the majority read the dissent, but were
consciously indifferent to the problems it identified.Â  The only other
alternative is that the majority consciously chose not to read the dissenting
opinion.Â  Under either of these scenarios, the erroneous judgment cannot be
anything other than a judicial error.Â  They either intended the result originally
rendered, willfully and consciously chose not to correct it when their
attention was directed to this problem by the dissenting opinion, or willfully
and consciously failed to read the original dissenting opinion.

LetÂs Start Over

Â Â Â Â Â Â Â Â Â  The discussion of this original case
on appeal could have been addressed very simply.Â  The appellant failed to
establish a number of the elements to show himself entitled to attorneyÂs fees
for bringing an interpleader action.Â  He unreasonably delayed bringing the interpleader
while trying to negotiate a settlement.Â  He failed to establish himself as an
innocent stakeholder by seeking 66.66% of the interpleaded funds for himself
and as an attorney fee from the fund.

Â Â Â Â Â Â Â Â Â  During negotiations with the medical
creditors Avila graphically demonstrated the delay in tendering the funds was
unreasonable and that Avila was not an ÂinnocentÂ stakeholder.Â  This is the
settlement Avila proposed:

Â Â Â Â Â Â Â Â Â  DefendantÂs insurance has [sic] the
maximum policy limits of $20,000.00, which this has settled for that amount.Â 
This is the maximum we can obtain from the defendantÂs insurance.Â  This
settlement amount must be divided 1/3 to the client, 1/3 to the attorney, and
1/3 to all the medical providers, [sic] Please keep in mind and consider
the fact that if the medicals do not decrease, we may be forced to file a
motion of interpleader and have the court decide how much you will get.Â  Please
keep in mind that this amount ($6,666.66) must cover ALL his outstanding
medical bills.

Â 

Appendix to AppellantÂs Brief, tab K.

Â 

Â Â Â Â Â Â Â Â Â  The outrageousness may not be
immediately apparent unless you also know the total medicals he was trying to
settle for $6,666 was $72,468, AND that there is another suit pending, the
severed suit against Williams, in which the extent of his medical injuries and
medical expenses will be used to maximize the recovery.Â  Under AvilaÂs settlement proposal, the medical creditorsÂ lien on the recovery in that suit would
be extinguished.

Â Â Â Â Â Â Â Â Â  Further, Avila had not tendered the
funds into the court, which is an element of an interpleader action, holding
them instead in the attorneyÂs trust account.Â  Avila held onto the funds so
long he was ordered to pay the funds into the court and it is not clear on the
record before us that he ever did. 

Â Â Â Â Â Â Â Â Â  And, finally, Avila only presented
evidence of his efforts to secure the settlement and efforts to obtain the part
(66.66%) Avila claimed he and his attorney were entitled to out of the fund.Â 
He presented no evidence of the fees and expenses incurred to bring the interpleader
and, under his theory on appeal, that is all he might have been entitled to
obtain.Â  And on remand, that will be all that Avila is entitled to under the
majorityÂs opinion and judgment:Â  the fees necessary for bringing this
interpleader action Â not the fees necessary to obtain the settlement fund.Â 
And whatever amounts are allocated to the medical creditors on remand, it
should be made clear that this is an allocation of proceeds of a partial settlement
fund and does not extinguish the entirety of their medical creditor lien
as Avila was demanding in his settlement proposal.

Conclusion

Â Â Â Â Â Â Â Â Â  So I conclude where my earlier
dissenting opinion began:

There is simply no pleasant way to say this.Â 
This case and its appeal have been botched beyond repair, and it is not this
CourtÂs job to fix it.

Â 

Â Â Â Â Â Â Â Â Â  Now the majorityÂs two efforts to
ÂfixÂ the case for Avila have become part of the problem.Â  This dissenting
opinion as well as my original dissenting opinion address why the majority is
wrong on the merits of this appeal.Â  This dissenting opinion also addresses why
the corrected opinion and judgment are void.Â  I dissent.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Dissenting
opinion delivered and filed December 14, 2005









[1]
The case style has been changed by the
majority so I must use their style to make sure the opinions are issued and
kept together.Â  But, for a number of reasons that will become apparent in this
dissenting opinion, I think this change is in error.

Â