192 S.W.3d 133 (2006)
In the Interest of E.A.K.
No. 14-05-00397-CV.
Court of Appeals of Texas, Houston (14th Dist.).
February 28, 2006.
Rehearing Overruled April 6, 2006.
*136 Liza Alice Greene, Houston, for appellants.
*137 Rodney James, Sandra D. Hachem, Houston, Stacy Solis, Humble, for appellees.
Panel consists of Chief Justice HEDGES and Justices ANDERSON and FROST.

MAJORITY OPINION
ADELE HEDGES, Chief Justice.
Mustofa K. Khandokar appeals from the trial court's order terminating his rights as a parent of E.A.K., a minor. A jury found that at least one of the grounds alleged for termination was proven by clear and convincing evidence. The jury further found that termination of Mustofa's parental rights would be in E.A.K.'s best interest. The trial court entered a decree of termination in accordance with the jury's findings. On appeal, Mustofa contends that (1) the trial court erred in admitting certain documents over hearsay objections, (2) the trial court erred in admitting the hearsay statements of a child, and (3) the evidence was insufficient to support the jury's finding on each ground for termination and the finding that termination would be in E.A.K.'s best interest. We reverse and remand.

I. Background
E.A.K was born in Arlington, Texas, on June 12, 2002, to Mustofa and Stacey Khandokar. The couple had been married in 1994 before divorcing in 2000 and subsequently reconciling. E.A.K. was born with craniosynotosis, a birth defect involving premature closing of the suture lines in the skull. It was corrected by surgery. At the time of E.A.K.'s birth, J.J., Stacey's daughter by another father, was also staying with them, although a previous court order had given permanent managing conservatorship of J.J. to Stacey's parents. J.J. turned nine years old shortly after E.A.K. was born.
While J.J. was living with Mustofa and Stacey, she allegedly told Stacey and a neighbor, Karri LaChance, that Mustofa had touched her inappropriately. She repeated her accusations to a Child Protective Services ("CPS") caseworker.[1] Stacey and LaChance also made formal written statements to the Arlington Police Department.[2] A warrant issued for Mustofa's arrest on October 25, 2002. After an investigation, the CPS caseworker concluded that there was reason to believe Mustofa had sexually molested J.J. Mustofa was released on bond on the condition that he have no contact with J.J. or any unsupervised contact with any other minor. Ultimately, the CPS investigation was closed due to Stacey's refusal to cooperate and the fact that she was apparently protecting J.J. from Mustofa by not allowing him to have contact with her. The criminal charges were dismissed on September 21, 2004, after Stacey relocated to Houston with the children.
*138 In Houston, J.J. made an allegation of sexual abuse against the father of one of her friends. The Houston Police Department and CPS investigated and ruled out sexual abuse; however, CPS concluded that there was reason to believe that Stacey had provided inadequate supervision of J.J. The investigation was closed when Stacey returned J.J. to her (J.J.'s) grandmother. Subsequently, Stacey had an episode during which the police were called, and E.A.K. was taken into custody by the Department of Family and Protective Services ("DFPS").[3] According to the DFPS transfer summary, Stacey was found wandering around outside a service station with E.A.K., and police took her to her parent's house before ultimately taking her for psychiatric evaluation.[4] Stacey testified that the police found her at her father's house because she had left a suitcase at a service station.
DFPS filed a Petition in Intervention seeking to terminate the parental rights of both Mustofa and Stacey in regards to E.A.K.[5] At trial, DFPS emphasized J.J.'s sexual assault allegations against Mustofa; however, DFPS did not introduce the allegations through J.J.'s live or videotaped testimony or even through the live testimony of anyone to whom J.J. made an outcry statement. Instead, DFPS offered several documents purportedly memorializing J.J.'s outcry statements and contained in the DFPS case file, which was admitted over hearsay objections as petitioner's exhibit 1. The only live testimony regarding J.J.'s outcry came from Stacey, who testified that most of the allegations made against Mustofa were false. Mustofa denied the allegations in his own testimony.[6]
The portion of the jury charge concerning Mustofa queried whether he (1) knowingly placed or knowingly allowed E.A.K. to remain in conditions or surroundings which endanger E.A.K.'s physical or emotional well being, (2) engaged in conduct or knowingly placed E.A.K. with persons who engaged in conduct which endangers E.A.K.'s physical or emotional well being, (3) failed to support E.A.K. in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition, and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of E.A.K. The jury found that at least one of the grounds was proven by clear and convincing evidence and that termination of Mustofa's parental rights would be in E.A.K.'s best interest. The trial court entered a decree of termination in accordance *139 with these findings and also terminating Stacey's rights pursuant to separate findings of the jury. Stacey did not appeal the termination of her rights.

II. The DFPS Case File
Prior to trial, DFPS indicated that it planned to introduce into evidence the entirety of its 1,176-page case file as one exhibit. In response, Mustofa filed written objections to at least sixty of the documents contained in the file. Most of these documents were objected to on hearsay grounds. In a pre-trial hearing two days before trial, DFPS reiterated that it intended to introduce the case file as one exhibit, and Mustofa reminded the court that he had filed written objections. The trial court overruled the objections "at this time" but also refused to admit the case file because nothing was being offered for admission at that hearing. On the morning of the first day of trial, the court held another hearing before the jury was seated. At that time, DFPS offered its case file as petitioner's exhibit 1. In response to Mustofa's hearsay objections, DFPS argued that the case file was admissible under the business records exception to the hearsay rule. See TEX.R. EVID. 803(6). A DFPS employee, Jennifer Lilly, filed an affidavit and testified in support of admitting the documents. See id. 902(10) (providing requirements for business records affidavits). She stated that she is the custodian of the records for DFPS, that the records were kept by DFPS in the regular course of business, that it was in the regular course of business for an employee or representative of DFPS with knowledge of the information recorded to make the record or transmit the information, and that the records were made at or near the relevant time period. She further testified that DFPS was required by statute to gather the information contained in the file, which may have been a reference to the public records exception to the hearsay rule, although this exception was not specifically identified in the trial court as a basis for admission. See id. 803(8) (providing requirements for public records exception to hearsay rule).
At the hearing, Mustofa specifically identified several documents in the file as containing hearsay and not being admissible under the business records exception because they were not generated by DFPS. The objected-to documents included the following: (1) a psychological assessment of Mustofa; (2) a home study prepared by a DFPS contractor of a home as a potential foster placement for E.A.K.; (3) a written statement that Stacey gave to the Arlington police relating the sexual assault allegations made by J.J. against Mustofa; (4) a written statement that the neighbor, LaChance, gave to police relating J.J.'s allegations; (5) a child abuse protocol made by a physician assistant at the ABC Center of the University of Texas Medical Branch at Galveston; and (6) an Arlington Police Department arrest warrant. The trial court admitted all of the documents into evidence except the psychological assessment, which it expressly excluded.
In a separate pretrial hearing, DFPS indicated that it intended to introduce outcry statements made by J.J. (and contained in the case file) without calling J.J. as a witness, pursuant to section 104.006 of the Texas Family Code. TEX. FAM.CODE ANN. § 104.006 (Vernon 2002). These statements included ones made to Stacey, to LaChance, and to a CPS caseworker. The trial court ruled that it would allow the statements made to Stacey and the caseworker but would not allow the statements made to LaChance unless LaChance was present and available to testify. At trial, the statements of all three women *140 were admitted into evidence even though LaChance apparently was not present.

III. Analysis
On appeal, Mustofa contends that (1) the trial court erred in admitting certain documents contained in petitioner's exhibit 1 over his hearsay objections; (2) the trial court erred in admitting J.J.'s outcry statements to Stacey, LaChance, and the caseworker; and (3) the evidence was insufficient to support the jury's finding on each ground for termination and the finding that termination would be in E.A.K.'s best interest. We consider each contention in turn.

A. Hearsay
In his first issue, Mustofa contends that the trial court erred in admitting certain documents in exhibit 1 over his hearsay objections.[7] On appeal, DFPS argues that admission of the documents was proper under both the business records exception and the public records exception to the hearsay rule. See TEX.R. EVID. 803(6), (8).
In reviewing a trial court's decision to admit evidence, we utilize an abuse of discretion standard. See In re J.F.C., 96 S.W.3d 256, 285 (Tex.2002); Nat'l Liability and Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex.2000). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.1998). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. Id. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *141 Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 908 n. 5 (Tex.2004).

1. The Business Records Exception
Rule 803(6) of the Texas Rules of Evidence, the business records exception, provides that evidence meeting the following criteria should not be excluded under the hearsay rule:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. `Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.
Thus, the foundation for the business records exception has four requirements: (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. Powell v. Vavro, McDonald, and Assocs., L.L.C., 136 S.W.3d 762, 765 (Tex.App.-Dallas 2004, no pet.); Daimler-Benz Aktiengesellschaft v. Olson, 21 S.W.3d 707, 716 (Tex.App.-Austin 2000, pet. dism'd w.o.j.).
At trial, DFPS argued that its entire case file was admissible under this exception and supported that assertion with Jennifer Lilly's affidavit and live testimony. Mustofa argued primarily that certain documents in the case file were not admissible under the business records exception because those documents were not generated by DFPS. We will address each document in turn: (1) the psychological assessment; (2) the home study; (3) Stacey's written statement; (4) LaChance's written statement; (5) the child abuse protocol; and (6) the arrest warrant.
First, regarding the psychological assessment, the trial court excluded the document from exhibit 1 in response to Mustofa's objection. Consequently, his argument on appeal is moot in relation to that document. See In re G.A.T., 16 S.W.3d 818, 828 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (stating that to preserve error on objection, party must suffer adverse ruling).[8]
The home study Mustofa objected to was of a potential foster placement for E.A.K. As discussed in detail above, Lilly, a DFPS employee, testified that based on her personal knowledge, it was in the regular course of business for an employee or representative of DFPS with knowledge of the information recorded to make the records or transmit the information contained in the case file. The home study reflects that it was prepared by Etho T. Pugh, who describes himself as a "Contract Social Worker." The document also contains a signature block for Virginia Lamb, who is listed as a "TDPRS Supervisor."[9] *142 Furthermore, the document indicates that the home study was conducted pursuant to a referral to TDPRS. Thus, it appears that the document was prepared by a contractor on behalf of, for the use of, and representing TDPRS. Rule 803(6) does not require that the witness laying the predicate for admission of a document be the creator of the document or even an employee of the same company as the creator. See TEX.R. EVID. 803(6); Houston Shell & Concrete Co. v. Kingsley Constructors, Inc., 987 S.W.2d 184, 186 (Tex.App.-Houston [14th Dist.] 1999, no pet.); Montoya v. State, 832 S.W.2d 138, 141 (Tex. App.-Fort Worth 1992, no pet.). The witness does not even have to have personal knowledge of the information recorded in the document but need only have knowledge of how the records were prepared. In re K.C.P., 142 S.W.3d 574, 578 (Tex. App.-Texarkana 2004, no pet.); In re J.G., 112 S.W.3d 256, 262 (Tex.App.-Corpus Christi 2003, no pet.); Montoya, 832 S.W.2d at 141. As stated, Lilly testified that it was in the regular course of business for an employee or representative of DFPS with knowledge of the information to make the record or transmit the information contained in the case file. Considering Lilly's testimony and the face of the document, the record supports the conclusion that the home study was created by a representative of DFPS under the supervision of a DFPS employee. Thus, Mustofa's objection that the business records exception did not apply to the home study because it was not prepared by DFPS is without merit. The trial court did not abuse its discretion in admitting the home study under the business records exception.[10]
We next consider the handwritten statements that Stacey and LaChance gave to the Arlington police relating the sexual assault allegations made by J.J. against Mustofa. These statements contained hearsay in that they (1) were the written statements of Stacey and LaChance instead of their live testimony at trial, and (2) related statements that J.J. allegedly made to the two women.[11]See TEX.R. EVID. 801(d); C & H Nationwide, Inc. v. Thompson, 810 S.W.2d 259, 268 (Tex.App.-Houston [1st Dist.] 1991) (finding that out-of-court written statement was hearsay), aff'd in part, rev'd in part on other grounds, 903 S.W.2d 315 (Tex.1994). The statements were clearly not created by DFPS employees or representatives in the usual course of business.[12]
It appears, from DFPS's arguments at trial and on appeal, that Lilly's testimony regarding the documents may *143 have been intended to refer to the gathering of the case file itself as opposed to the actual generation of each document in the file. Indeed, it has been held that the compilation or keeping of documents created by others may support admission under Rule 803(6), if done in the regular course of business. See, e.g., Duncan Dev., Inc. v. Haney, 634 S.W.2d 811, 813-14 (Tex.1982). However, in order for compilation to support admission, there must be a showing that the authenticating witness or another employee of the company compiling the records knew of the events described in the compiled records such that they had personal knowledge of the accuracy of the statements in the documents. See id. (holding that invoices of subcontractors were properly authenticated by employee of general contractor because employees of general contractor had checked to ensure that statements on invoices were accurate); see also Nissan Motor Co. Ltd. v. Armstrong, 145 S.W.3d 131, 139-140 (Tex.2004) ("While a compilation of such complaints by a manufacturer might constitute a business record that such claims were (or were not) received, they could not be a business record that such claims are true unless the employee making the record had personal knowledge of each." (footnote omitted)); Houston Shell & Concrete Co., 987 S.W.2d at 186 (holding that test core results from third party were admissible as business records because authenticating witness testified that he personally watched the samples being taken and noted the results and that engineers in the field rely on the testing system used). Here, Lilly's testimony did not demonstrate that she, or anyone else employed by DFPS, had personal knowledge of the events described in Stacey's and LaChance's statements such that they could verify the accuracy of the statements. DFPS did not offer any other evidence in support of admission of these statements under the business records exception. Consequently, DFPS failed to lay a proper predicate for admission of this evidence under the business records exception.
Next, we turn to the child abuse protocol prepared by a physician assistant ("P.A.") at the ABC Center. This document contains the P.A.'s description of an interview and physical examination of J.J., including the following hearsay: (1) J.J.'s statements to the P.A., (2) the P.A.'s relating of J.J.'s statements, (3) and the P.A.'s recounting of her own observations during the examination.[13] Again, DFPS argued that the document was admissible under the business records exception. The face of the document indicates that the ABC Center is a department of the University of Texas Medical Branch at Galveston. There is nothing in the record indicating that there was a representative connection between the ABC Center and DFPS or that the P.A. herself was an employee or representative of DFPS.[14] Accordingly, *144 Lilly's generalized statement that the records were prepared by employees or representatives of DFPS is unavailing in regard to the protocol. Further, Lilly did not testify that she or any other employee of DFPS had personal knowledge of the events described in the protocol such that they could verify the accuracy of the statements made therein. See Duncan Dev., 634 S.W.2d at 814; Houston Shell & Concrete Co., 987 S.W.2d at 186. Thus, the mere fact that the protocol was apparently received by a DFPS employee and placed in the file does not mean that it was admissible as a business record of DFPS. See Armstrong, 145 S.W.3d at 139-140. DFPS did not offer any other witness in support of the admission of these statements. Thus, DFPS failed to lay a proper predicate for admission of the protocol under the business records exception.
We next examine the Arlington Police Department arrest warrant. The warrant itself simply commands the arrest of Mustofa for sexual assault of a child. An affidavit attached to the warrant by an Arlington police officer relates statements made by J.J., Stacey, LaChance, a CPS investigator, and the ABC Center P.A.[15] Because most of the affidavit is comprised of the officer relating what other adults said J.J. told them, the document contains three levels of hearsay. Again, there is no evidence in the record that the Arlington Police Department was operating under a representative capacity on behalf of DFPS when the record was made. Nor is there any evidence that any employee of DFPS had personal knowledge of the events described in the affidavit such that they could verify the accuracy of the statements made therein.[16]See Duncan Dev., 634 S.W.2d at 814; Houston Shell & Concrete Co., 987 S.W.2d at 186. Thus, the mere fact that the affidavit was apparently received by a DFPS employee and placed in the file does not mean that it is admissible as a business record of DFPS. See Armstrong, 145 S.W.3d at 139-140. DFPS failed to lay a proper predicate for admission of the arrest affidavit under the business records exception.

2. The Public Records Exception
In its brief on appeal, DFPS further suggests that the documents discussed above (e.g., Stacey's and LaChance's written statements, the child abuse protocol, and the arrest affidavit) were also admissible under the public records exception to the hearsay rule. See TEX.R. EVID. 803(8). Rule 803(8) reads as follows:
Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:
(A) the activities of the office or agency;
(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

*145 (C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;
unless the sources of information or other circumstances indicate lack of trustworthiness.
Unlike business records, public records can be self-authenticating if they are under seal or are certified copies. See TEX.R. EVID. 902(1), (4), (10); State v. Foltin, 930 S.W.2d 270, 272-73 (Tex.App.-Houston [14th Dist.] 1996, writ denied) ("Once a document has been authenticated, Rule 803(8) does not require a formal predicate to be laid through a witness, but the offered document must be shown to satisfy the requirements of the rule."). None of the documents at issue were either under seal or certified copies. DFPS argues instead that they were public records because they set forth the activities of DFPS, and DFPS was charged with a legal duty to have the documents prepared or recorded. Indeed, Lilly testified that DFPS was required by statute to have the records in the case file prepared and reduced to writing. While this testimony may have been applicable to some documents in the file, it was not relevant to Stacey's and LaChance's written statements, the child abuse protocol, or the arrest affidavit, since there has been no showing that these documents were prepared by or for DFPS.[17] DFPS offered no other evidence or argument in support of admission under 803(8).
DFPS failed to lay a proper predicate for admission of the documents under either the business records exception or the public records exception. DFPS does not allege that the documents were admissible under any other exception and, more importantly, did not lay any foundation in the trial court in support of any other exception. See Ramirez, 159 S.W.3d at 908 n. 5 (stating that proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence). Consequently, the trial court erred in admitting Stacey's and LaChance's written statements, the child abuse protocol, and the arrest affidavit over Mustofa's hearsay objections.

B. Statements of the Child
Under his second issue, Mustofa contends that the trial court erred in finding that there were sufficient indications of reliability to support admission of J.J.'s hearsay statements to Stacey, LaChance, and CPS caseworker Amanda Dollar. See TEX. FAM.CODE ANN. § 104.006 (Vernon 2002).[18] The statements at issue appear respectively in Stacey's and LaChance's handwritten statements and in a report prepared by CPS caseworker Jennifer Deible. In the previous section of this opinion, we held that the trial court erred in admitting Stacey's and LaChance's *146 hearsay statements. Consequently, we need not separately discuss the admissibility of the statements allegedly made by J.J. and contained in the written statements of the two women.[19] We therefore confine our consideration under the present issue to whether J.J.'s alleged statements to Dollar, as related in Deible's report, were admissible under section 104.006.
Prior to trial, Mustofa filed written hearsay objections to Deible's report, as well as to other pieces of evidence. When Mustofa raised the objections in a pretrial hearing, the trial court stated that it was going to deny the objections at that time but would consider each individually when the evidence in question was presented. Also prior to trial, DFPS filed a motion seeking admission of J.J.'s statements to Dollar under section 104.006 of the Family Code. That section permits admission of the out-cry statements of a child that would otherwise be inadmissible hearsay, provided certain requirements are met. Id.; In re K.L., 91 S.W.3d 1, 15 (Tex.App.-Fort Worth 2002, no pet.).[20] Mustofa filed a written response arguing, among other things, that there were insufficient indications of reliability to support admission of the statements as required under section 104.006.[21] After the pre-trial hearing on the matter, the court ruled that "any outcry statements" J.J. made to the caseworker (Dollar) were admissible.
Clearly, section 104.006 requires that the trial court hold a hearing to determine the reliability of an outcry statement before admission. See id.; In re K.L., 91 S.W.3d at 16 (holding that hearing requirement is mandatory). Here, as mentioned, the trial court held a hearing regarding the admissibility of J.J.'s statements to *147 Stacey, LaChance, and the CPS caseworker. At the hearing, the only evidence the court received was Stacey's live testimony and her deposition transcript. Although at this hearing, Stacey testified in detail regarding the statements J.J. made to her, Stacey expressly stated that she was not present when J.J. made her statements to the caseworker.[22]
The only other evidence regarding the time, content, and circumstances of the statements is from the caseworker's report in which the statements appear. The report indicates that it was prepared by caseworker Deible, although it also indicates that the interview was conducted by caseworker Dollar. The report does not explain whether Deible was present at the interview or how she learned of the details that she recounts, although there is a notation that the interview was videotaped. The report provides a date of the interview, August 21, 2002, and a location, the Arlington Alliance for Children, but it does not give any other explanation of the circumstances in which the interview was given, including who was present. The text of the report is basically a list of statements made by J.J. Except for one question that J.J. was asked about a drawing, the report does not provide any of the questions or comments made during the interview by the interviewer.[23] As the Texas Supreme Court has recognized, the reliability of a child's outcry statement may turn on whether the child was asked leading questions or simply allowed to tell what happened to him or her. See Richardson v. Green, 677 S.W.2d 497, 501 (Tex. 1984); see also In re P.E.W., 105 S.W.3d 771, 775 (Tex.App.-Amarillo 2003, no pet.) (considering fact that many of child's statements were volunteered in assessing reliability under section 104.006). The report additionally does not indicate whether a predicate was laid for whether J.J. understood the difference between truth and lies. See In re P.E.W., 105 S.W.3d at 775 (considering child's explanation when asked whether he knew truth from lies in assessing reliability under section 104.006).
In conclusion, the contents of the report itself do not demonstrate sufficient indicia of reliability. Because DFPS did not present any other evidence of the reliability of J.J.'s statements to Dollar, we find that there was an insufficient demonstration of reliability to support admission under section 104.006. The trial court erred in admitting the hearsay statements.[24]

*148 C. Harm
Having concluded that the trial court erred in admitting certain documents over Mustofa's hearsay objections, we must now determine whether such error was harmful. See TEX.R.APP. P. 44.1; Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.1989). To establish harm (i.e., that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment), the appellant must demonstrate that the excluded evidence was both controlling on a material issue and not cumulative of other evidence. Williams Distrib. Co. v. Franklin, 898 S.W.2d 816, 817 (Tex.1995). Error in the admission of evidence is generally deemed harmless if the same or similar evidence is subsequently introduced without objection. Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex.2004); Richardson, 677 S.W.2d at 501. Application of this rule requires an assessment of whether the subsequently admitted evidence is sufficiently similar to the objected-to evidence so as to render admission of the objected-to evidence harmless.[25]See Richardson, 677 S.W.2d at 501. Whether erroneous admission was harmful is often more a matter of judgment than precise measurement. Armstrong, 145 S.W.3d at 144.
The trial court erred in admitting the following evidence pertaining to the sexual abuse allegations J.J. made against Mustofa: (1) Stacey's written statement, (2) LaChance's written statement, (3) the child abuse protocol, (4) the arrest warrant affidavit, and (5) the CPS caseworker's report. However, these were not the only pieces of evidence suggesting that Mustofa sexually assaulted J.J. The documents contained in petitioner's exhibit 1 are replete with references to the abuse allegations and the investigation of Mustofa. Most of these references come in the form of other reports filed by CPS and DFPS employees, including narrative analyses, closing summaries, and summaries of interviews. Although this evidence also contains hearsay, it was either not objected to or no ruling was obtained on any such objection. Thus, the jury could have properly considered it. See TEX.R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value *149 merely because it is hearsay."). We must determine whether the properly considered evidence was sufficiently similar to the erroneously considered evidence to render admission of the erroneously considered evidence harmless. See Richardson, 677 S.W.2d at 501.
In Richardson, a parental termination case, the respondent was accused of sexual abuse of a child. He objected to testimony from a Department of Human Resources caseworker regarding what the child said during an initial visit, but he did not object to the playing of a videotape of a subsequent interview of the child by the same caseworker. 677 S.W.2d at 501. The supreme court held that the statements were not sufficiently similar so that the failure to object to the videotape did not render the admission of the statements from the initial visit harmless. The court emphasized that the statements made by the child in the initial visit were produced "without any leading or solicitation," but the videotaped interview was filled with leading questions by the caseworker. Id. The court further noted that the child's responses on the videotape were "at best contradictory, unclear and, more often than not, negated the claim [against] his father." Id. The court concluded that "[t]he court and jury did not get the same picture from ... what was said . . . in the first interview as they did from the videotape of the second interview." Id.
Here, the erroneously admitted evidence included the written accounts of four people (Stacey, LaChance, the P.A., and the caseworker) purporting to relate the actual statements made by the alleged victim concerning the abuse. The erroneously considered results of the medical examination by the P.A. were consistent with these statements, and an official police document (the arrest affidavit) again recounted the specific allegations. We contrast this detailed but erroneously considered evidence with the evidence that the jury properly considered: narrative analyses by caseworkers, closing summaries, and summaries of interviews. In short, the evidence that was erroneously admitted was strikingly more detailed, more focused on the allegations themselves, and closer to the source than was the other evidence relating to sexual abuse by Mustofa. Also in the record was evidence that the criminal charges and the earlier CPS investigation relating to the sexual abuse allegations were both dropped. Additionally, there was evidence that J.J. may have falsely accused another man of sexually molesting her, and at trial, Stacey largely denied the accuracy of J.J.'s allegations against Mustofa. With this evidence in mind, the jury probably would not have seen the properly admitted DFPS summaries and less-detailed narrative reports as particularly strong evidence that Mustofa sexually assaulted J.J.
Certainly, the jury charge provided other predicate grounds on which the jury could have found that Mustofa's parental rights should be terminated; however, it is clear from the record that DFPS emphasized the sexual abuse allegations throughout trial as the primary ground for termination. Revealingly, when Jennifer Lilly, the DFPS caseworker who testified on behalf of the agency, was asked at trial whether she knew of any reason why E.A.K. should not be placed with Mustofa that was not related to the sexual abuse allegations, she was unable to provide a responsive answer.[26] Furthermore, during closing argument, although DFPS's counsel *150 alleged as grounds that Mustofa allowed Stacey to care for E.A.K. even though there was evidence she was mentally ill, that Mustofa failed to complete his reunification plan, and that he failed to support E.A.K. to the best of his ability, counsel for DFPS emphasized the sexual abuse allegations three times during his brief closing remarks.[27]See Armstrong, 145 S.W.3d at 144 (stating that courts sometimes look to efforts made by counsel to emphasize erroneous evidence in determining whether admission was harmful).
In conclusion, the jury's findings probably turned on its consideration of the erroneously admitted evidence. Thus, we hold that the trial court's admission errors were reasonably calculated to cause and probably did cause the rendition of an improper judgment. See Franklin, 898 S.W.2d at 817; Richardson, 677 S.W.2d at 501. We sustain Mustofa's first and second issues.[28]

IV. Legal Sufficiency
In his third through sixth issues, Mustofa contends that the evidence was legally insufficient to support the jury's finding on each predicate ground for termination of his parental rights to E.A.K. In his seventh issue, he contends that there was legally insufficient evidence to support the finding that termination was in E.A.K.'s best interest.[29] We utilize the established standards of review in considering these legal sufficiency challenges. See City of Keller v. Wilson, 168 S.W.3d 802, 809-23, 827-28 (Tex.2005). In parental termination cases, the burden of proof for termination is by clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon 2002). Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Id. § 101.007. In considering the evidence, we must bear in mind this elevated burden of proof See Wilson, 168 S.W.3d at 817; In re J.F.C., 96 S.W.3d 256, 264 (Tex.2002).
One of the grounds presented to the jury for termination of Mustofa's rights was that he had "engaged in conduct or knowingly placed [E.A.K.] with persons who engaged in conduct which endangers the physical or emotional well-being of [E.A.K.]." See TEX. FAM.CODE ANN. § 161.001(1)(E). "Endanger" in this context means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment; however, it does not require that the conduct be directed at the child or that the child actually suffer injury. Tex. Dept. of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). "Endanger" here means "to expose to loss or injury; to jeopardize." Id. Courts of appeals have consistently *151 held in termination cases that evidence a parent has sexually or physically abused a child not subject of the termination action also constitutes evidence of endangerment to the child subject to the termination action. See, e.g., In re R.W., 129 S.W.3d 732, 742 (Tex.App.-Fort Worth 2004, pet. denied); In re King, 15 S.W.3d 272, 276 (Tex.App.-Texarkana 2000, pet. denied); In re K.M.M., 993 S.W.2d 225, 228 (Tex. App.-Eastland 1999, no pet.); Director of Dallas County Child Protective Servs. Unit of Tex. Dept. of Human Servs. v. Bowling, 833 S.W.2d 730, 732-33 (Tex. App.-Dallas 1992, no pet.), overruled on other grounds, In re C.H., 89 S.W.3d 17, 26 (Tex.2002). The basic logic of these cases is that a trier of fact may infer endangerment to one child from actual harm caused to another child. See, e.g., In re King, 15 S.W.3d at 276; Bowling, 833 S.W.2d at 733.
In the present case, as discussed above under the harm analysis relating to the admission of hearsay, there was considerable evidence suggesting that Mustofa sexually abused J.J. Although some of this evidence was admitted in error, additional evidence was either properly admitted or admitted without objection. Thus, the jury could have properly considered it. See TEX.R. EVID. 802. This properly considered evidence supports the conclusion that Mustofa molested J.J. while she was living in his home and under his care and while E.A.K. was also present in the home. Consequently, we find that it constituted legally sufficient evidence of endangerment to E.A.K. to support the jury's finding of termination.
Because we find that there was legally sufficient evidence to support one of the predicate findings for termination of Mustofa's parental rights, we need not address the sufficiency of the evidence relating to other predicate findings. See In re A.V., 113 S.W.3d 355, 362 (Tex.2003); In re U.P., 105 S.W.3d 222, 236 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Accordingly, Mustofa's third through sixth issues are overruled.
In his seventh issue, Mustofa contends that there was legally insufficient evidence to support the jury's finding that the termination of his parental rights was in E.A.K.'s best interest. Under the charge, and section 161.001(2) of the Family Code, a parent's rights can be terminated only upon a showing that the termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2). The charge also provided seventeen factors for the jury to consider in relation to best interest, including: the emotional and physical needs of the child now and in the future; any emotional and physical danger to the child now and in the future; the parenting ability of the individuals seeking custody; the acts or omissions of the parent that may indicate that the relationship is not a proper one; any excuse for the acts or omissions of the parent; whether there is a history of abusive or assaultive conduct by the parent; and whether the parent demonstrates adequate parenting skills, including providing the child and any other child under the family's care with care, nurturance, a safe and stable physical environment, and protection from repeated exposure to violence whether or not directed at the child. See generally TEX. FAM.CODE ANN. § 263.307 (Vernon 2002) (listing factors relevant to determining best interest of a child); Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1972) (same).
The evidence that Mustofa sexually abused J.J. while she was in his home and while E.A.K. was also in the home is *152 relevant to each of these listed factors.[30] Numerous cases have held that evidence of continued exposure to a child abuser constitutes legally sufficient evidence that termination is in the best interest of the child. See, e.g., In re S.F., 141 S.W.3d 774, 777-78 (Tex.App.-Texarkana 2004, no pet). In accordance, we find that there was legally sufficient evidence that termination of Mustofa's parental rights would be in E.A.K.'s best interest.
Because we find that the trial court erred in admitting hearsay statements into evidence and such error was not harmless, we sustain Mustofa's first and second issues, reverse the trial court's judgment, and remand for further proceedings in accordance with this opinion.
FROST, J. dissenting.
KEM THOMPSON FROST, Justice, dissenting.
The trial court did not err in admitting into evidence a report by a caseworker at Child Protective Services (hereinafter "CPS").[1] Presuming, for the sake of argument, that the trial court abused its discretion in admitting the other four items as to which the majority finds error, consideration of the remaining evidence, including this CPS report, renders any such error harmless. Because there is legally and factually sufficient evidence to support the jury's verdict, this court should affirm the trial court's judgment. Because it does not, I respectfully dissent.

ERROR ANALYSIS
Two days before the jury trial in this case began, the trial court heard various motions. During this hearing, appellant Mustofa K. Khandokar's counsel referred to written objections that Khandokar had filed to the business records that CPS planned to introduce into evidence at trial. In these objections, Khandokar asserted, among other things, the following objections regarding the case report prepared by CPS caseworker Jennifer Deible (hereinafter the "Deible Report"):
[Khandokar] objects to the introduction of [the Deible Report] to the extent the document contains hearsay which is not admissible under the Texas Rules of Evidence. [Khandokar] requests that said document be introduced only if properly redacted to exclude any hearsay statements.[2]
Khandokar's counsel told the trial court that Khandokar believed the business records in question could be admitted into *153 evidence as long as the alleged hearsay was redacted. In response, the trial court deferred ruling on the admissibility of the documents, stating:
I'm going to deny your objections at this time, but will consider each objection individually during the presentation of the alleged evidence that may be presented. So I will consider each objection that you have as evidence [sic] as it's permitted. I'm not going to admit the documents now as you have not proved anything up.[3]
During the remainder of this pretrial hearing, Khandokar made no further objection or reference to the Deible Report. Despite this fact, the majority strains to conclude that Khandokar voiced an objection to the Deible Report when the trial court heard CPS's motion under section 104.006 of the Texas Family Code during the remainder of this hearing. The record does not support this conclusion.
In a suit affecting the parent-child relationship, a statement made by a child twelve years of age or younger that describes alleged abuse against the child is admissible as evidence if, in a hearing conducted outside the presence of the jury, the court finds that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability and the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child. See TEX. FAM.CODE § 104.006 (Vernon 2002). CPS filed a motion pursuant to section 104.006 seeking court findings under this statute that would allow the admission into evidence of the following:
(1) statements made by nine-year old J.J. to her mother, Stacey Khandokar, regarding sexual abuse by Mustofa Khandokar,
(2) Stacey Khandokar's sworn statement to the Arlington Police Department,
(3) Karri LaChance's sworn statement to the Arlington Police Department regarding J.J.'s statements to LaChance about sexual abuse,
(4) statements made by J.J. during a videotaped interview with caseworker Amanda Dollar,
(5) an Incident Report created by Detective Rogers of the Arlington Police Department,
(6) any disclosures of sexual abuse made by J.J. to the medical staff at the ABC Center.
This section 104.006 motion does not seek the admission into evidence of the Deible Report, and it makes no mention of that report, directly or indirectly. Khandokar filed a written response in opposition to CPS's motion that also makes no mention of the Deible Report.
At the hearing two days before trial, the trial court heard CPS's section 104.006 motion. During this hearing, Khandokar asserted the following arguments in opposition to CPS's motion:

*154 (1) section 104.006 of the Texas Family Code is unconstitutional;
(2) section 104.006 applies only to statements of alleged abuse made by a child who is the subject of the suit affecting the parent-child relationship; and
(3) J.J.'s statements that Khandokar sexually abused her are not sufficiently reliable.
The trial court stated that it was not persuaded by Khandokar's arguments opposing the motion but that CPS still had to put on evidence in support of its motion under section 104.006 of the Texas Family Code. The trial court stated that it had not yet ruled on the motion because it had heard no evidence. The trial court then heard testimony from Stacey Khandokar. Following this testimony, the trial court stated that it was "going to admit any outcry statement made by the child to the caseworker." The only caseworker mentioned at that hearing was Amanda Dollar, who took a videotaped statement from J.J.; therefore, the trial court's statement shows that it intended to admit into evidence J.J.'s outcry statements to Dollar.[4] The trial court stated that if Karri LaChance (a neighbor) was present at trial, it would consider and probably allow her to testify about J.J.'s outcry statements to LaChance. The trial court also indicated that anything J.J. said to her mother, Stacey Khandokar, regarding the alleged abuse would be admissible. Although the trial court gave these indications as to what evidence it intended to admit and under what conditions it believed it would admit certain evidence, the trial court did not find that the time, content, and circumstances of any statement made by J.J. provided sufficient indicia of the statement's reliability, and the trial court did not grant CPS's motion under section 104.006.[5]
During this hearing, Khandokar voiced no objection to the admission of the Deible Report, nor did he assert that the statements in the Deible Report were not sufficiently reliable. If the trial court had made the required findings under section 104.006 as to certain statements, then the trial court would have admitted those statements, regardless of whether they otherwise would have been inadmissible hearsay. See TEX. FAM.CODE § 104.006. Khandokar's opposition to CPS's motion does not indicate that the statements referenced in that motion were inadmissible hearsay; rather, this issue is not relevant to the inquiry under that statute. See id. Therefore, Khandokar's actions in opposition to the relief CPS sought under section 104.006 of the Texas Family Code did not preserve error as to Khandokar's argument on appeal that the trial court abused its discretion in admitting the Deible Report *155 on the ground that it contained inadmissible hearsay.
In its motion under section 104.006, CPS did not refer to the Deible Report or to the description by Deible of J.J.'s statements to Dollar contained therein. Khandokar made no such references either in his written response or at the hearing on this motion. The majority indicates that the failure of CPS and Khandokar to specifically refer to the Deible Report or to Deible's description of J.J.'s statements to Dollar is of no consequence. However, J.J.'s statements to Dollar could be contained in the videotape of the interview or in Dollar's testimony as to these statements or in a transcript of this interview. By referring to J.J.'s statements to Dollar in its motion, CPS did not specify that it was seeking section 104.006 findings as to Deible's description of this interview on one-half of a page in the Deible Report. If CPS had sought section 104.006 findings as to this description, the trial court would have had a duty to examine the time, content, and circumstances of this description by Deible. However, this type of examination does not entail the same inquiry as an examination of J.J.'s videotaped statements or a transcript thereof or Dollar's testimony regarding the same. There is no reason to believe that the trial court meant to address the admissibility of a portion of one page of the Deible Report when it mentioned J.J.'s statements to Dollar.
On the first day of trial, a record custodian from CPS gave business-records testimony as to the documents in Petitioner's Exhibit 1, which includes the Deible Report. CPS offered this exhibit into evidence. The trial court heard Khandokar's objections to this exhibit, and the trial court admitted Petitioner's Exhibit 1 into evidence, except for certain psychological evaluations that are not relevant to this appeal.[6] The trial court admitted Petitioner's Exhibit 1 into evidence over the following objections asserted by Khandokar at trial: (1) some of the business records kept by CPS are incomplete; (2) some of the documents lack a required signature; (3) the exhibit contains multiple copies of some documents; (4) some of the documentsa home study, written statements of Karri LaChance and Khandokar's ex-wife, and a child-abuse protocolwere not prepared by CPS. CPS prepared the Deible Report.[7] On its face, this report is complete and does not have any space where a person would sign. No party *156 asserts that the Deible Report is incomplete, lacks a required signature, or was not prepared by CPS.[8] Khandokar voiced no objection at trial to the admission of the Deible Report.
To the extent the trial court ruled on Khandokar's many written objections at the pretrial conference, that ruling did not preserve error because it was too preliminary and conditional to constitute a final ruling on the admissibility of evidence. See Norfolk S. Ry. Co. v. Bailey, 92 S.W.3d 577, 583 (Tex.App.-Austin 2002, no pet.). In any event, even if Khandokar had obtained a final adverse ruling on his written objections to the Deible Report, those objections were not sufficient to preserve error. Khandokar objected to the Deible Report "to the extent" it contains inadmissible hearsay. Khandokar has never asserted that the entire Deible Report is inadmissible; rather, in his written objection, he requested that any inadmissible hearsay be redacted prior to the admission of the report. Given that CPS prepared this report and proved it up as a business record, portions of the report are admissible. For example, Deible's conclusion that there is reason to believe that Khandokar sexually abused J.J. is admissible evidence. When a document contains both admissible and inadmissible evidence, the objecting party should point out and specifically object to the parts of the document that allegedly contain inadmissible evidence. See Brown & Root, Inc. v. Haddad, 142 Tex. 624, 628-29, 180 S.W.2d 339, 341-42 (1944). A trial court properly overrules a general objection to a document as a whole when the objecting party does not specifically point out the portions alleged to be inadmissible hearsay if any part of that document is admissible. See id. Because part of the Deible Report was admissible and because Khandokar did not point out which parts he alleged were inadmissible, the trial court did not abuse its discretion in admitting the Deible Report as part of Petitioner's Exhibit 1. See Speier v. Webster Coll., 616 S.W.2d 617, 619 (Tex.1981); Brown & Root, Inc., 180 S.W.2d at 341-42; City of Houston v. Wisnoski, 460 S.W.2d 488, 490-91 (Tex.App.-Houston [14th Dist.] 1970, writ ref'd n.r.e.); Gen. Motors Corp. v. Harper, 61 S.W.3d 118, 126 (Tex.App.-Eastland 2001, pet. denied); see also Roberts v. Petco Animal Supplies, Inc., No. 14-00-01498-CV, 2002 WL 287742, at *4 n. 3 (Tex.App.-Houston [14th Dist.] Feb. 28, 2002, no pet.) (not designated for publication). Therefore, this court errs in sustaining Khandokar's first and second issues, reversing the trial court's judgment, and remanding for a new trial.[9]

*157 HARM ANALYSIS
The majority correctly states that error in the admission of evidence is harmless if the same or similar evidence was properly admitted elsewhere. However, because the majority concludes that the trial court abused its discretion in admitting the Deible Report, it includes this report in the "erroneously admitted evidence" category in its harm analysis. The Deible Report contains the following information:
 On June 12, 2002 [the day E.A.K. was born], J.J., then nine years old, moved in with her mother and Khandokar.
 According to J.J., three weeks later, Khandokar put his hand on her vagina and moved it while they were in the living room watching television.
 J.J. stated that she had seen Khandokar watching pornographic movies on a computer.
 J.J. also stated that Khandokar had put J.J.'s hand on his penis.
 J.J. reported that Khandokar put his hand inside her underpants in the back and that he tried to put his private in her bottom.
 J.J.'s mother reported that J.J. told her that Khandokar tried to get J.J. to put her hand on his penis and that Khandokar had touched J.J.'s vagina.
 J.J.'s mother stated that J.J. first complained of sexual abuse from Khandokar three weeks after J.J. moved in with them on June 12, 2002.
 In a face-to-face interview, Khandokar denied J.J.'s allegations. He stated that J.J. "followed him around the house trying to look at him" and that J.J.'s mother had asked him to wear something over his boxer shorts around the house but that he refused. Khandokar stated that J.J. walked around the house naked but that he did not care because she was a little girl. Khandokar stated that J.J. could have touched his penis accidentally when he was taking E.A.K. from her.
 During his interview with the caseworker, Khandokar admitted he had masturbated while watching pornography but denied that J.J. had ever seen him watching pornography. He said he had watched child pornography, although he denied being aroused by it. He also said that he had seen pornography involving animals.
 There is reason to believe that Khandokar sexually abused J.J.
The Deible Report is the main piece of purportedly "erroneously admitted evidence" upon which the majority relies to conclude that the alleged error is harmful. See Majority Op. at pp. 148-49. However, because the trial court properly admitted this report, it is actually part of the evidence weighing against harm. Unlike the evidence at issue in Richardson v. Green, *158 the evidence in the Deible Report is of at least similar, if not better, quality as the evidence contained in the written statements from Stacey Khandokar and Karri LaChance, the child-abuse protocol, and the arrest-warrant affidavit. See 677 S.W.2d 497, 501 (Tex.1984). The evidence contained in the Deible Report is sufficiently similar to the evidence that the majority concludes was erroneously admitted and so would render any such error harmless. See Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 403 (Tex.App.-Houston [14th Dist.] 2001, pet. granted, judgmt. vacated w.r.m.) (stating that error is harmless if the same evidence appears elsewhere in the record). Even if the majority were correct that Khandokar preserved error as to the trial court's admission of Deible's description of J.J.'s statements to Dollar on one-half of a page of the Deible Report and even if the trial court abused its discretion in admitting this description, consideration of the other nine and a half pages of the Deible Report, as to which error was not preserved, would render any such error harmless. Therefore, the court errs in sustaining the second issue as to the Deible Report.

CONCLUSION
The majority erroneously finds error under the second issue as to the trial court's admission of the Deible Report. Presuming, for the sake of argument, that the trial court abused its discretion in admitting the written statements from the child's mother (Stacey Khandokar) and the neighbor (Karri LaChance), the child-abuse protocol, and the arrest-warrant affidavit, this error would be rendered harmless by the trial court's admission of other portions of Petitioner's Exhibit 1, including the Deible Report. Therefore, the majority also errs in sustaining the first issue. Khandokar's remaining issues challenge the legal and factual sufficiency of the evidence. The majority correctly concludes that legally sufficient evidence supports the jury's verdict. Factually sufficient evidence also supports the jury's verdict. Therefore, this court should overrule all of the remaining issues and affirm the trial court's judgment.
NOTES
[1] CPS is a division of the Texas Department of Family and Protective Services ("DFPS"). See TEX. FAM.CODE ANN. § 264.404 (Vernon Supp.2004-05). This agency was formerly known as the Department of Protective and Regulatory Services ("DPRS"). See JOHN J. SAMPSON & HARRY L. TINDALL, TEXAS FAMILY CODE ANNOTATED, Chapter 264, Editor's Note, p. 1122 (2005). Because documents in the record refer to CPS, DFPS, and DPRS, we use these names interchangeably in this opinion.
[2] Among the allegations contained in the various statements and reports are that Mustofa digitally penetrated J.J.'s vagina, rubbed her vagina with his hand, asked to see her vagina, revealed his penis to her, masturbated in front of her, made her touch his penis, lay on top of her and made a grinding motion, and penetrated her anus with his penis. Stacey also alleged in her statement that Mustofa had child pornography on his computer. Mustofa denied all of the allegations.
[3] See note 1 supra.
[4] Evidence was adduced at trial that Stacey has a long history of mental problems.
[5] The Texas Attorney GeneralChild Support Division had apparently already filed a lawsuit against Mustofa, but the petition in that case is not in the clerk's record on appeal. DFPS intervened in the existing lawsuit.
[6] There was also evidence that at the time of trial, E.A.K. had been in DFPS custody for about one and a half years. He was found to have difficulty walking and a speech delay. He has reportedly progressed well in speech therapy and is expected outgrow the walking problems. He was placed with a foster family with two parents and four other children (one adopted child and three other foster children). Both the DFPS case worker and the ad litem assigned to the case reported that E.A.K. was doing well with the foster family. Both Stacey and Mustofa have visited E.A.K. since he was taken by DFPS. Although it was reported that generally, Mustofa and E.A.K. interacted well on the visits, there was apparently no verbal communication between them. Mustofa testified that if given primary custody of E.A.K., he planned to take the child to New Jersey where Mustofa's uncle and two cousins live. He said that they were good with children and would help him raise E.A.K.
[7] Neither Mustofa's presentation of this issue on appeal nor his objections in the trial court are models of preservation of error. On appeal, Mustofa generally discusses whether documents not generated by DFPS should have been admitted but only specifically discusses one documentthe arrest warrant. In the trial court, Mustofa's objections were also rather general; indeed, he did not even specifically identify the arrest warrant as an objected-to document. See generally Rogers v. Dept. of Family & Protective Servs., 175 S.W.3d 370, 376 (Tex.App.-Houston [1st Dist.] 2005, pet. dism'd w.o.j.) ("A general hearsay objection does not preserve for appeal a challenge to a proper predicate's being made to admit business records."). However, because in his appellate brief Mustofa did cite to his trial objections, and it is clear from those objections that he was objecting to documents offered under the business records exception by DFPS because they were not prepared by DFPSincluding "reports or records" prepared by the Arlington Police Department we will not overrule his issues based on improper briefing or waiver. Compare In re K.C.P., 142 S.W.3d 574, 578-79 (Tex.App.-Texarkana 2004, no pet.) (holding that although hearsay objections to business records were "somewhat imprecise," they were sufficient to bring the issue to the trial court's attention), and All Saints Episcopal Hosp. v. M.S., 791 S.W.2d 321, 323 (Tex.App.-Fort Worth 1990) (holding that although hearsay objection to records did not specifically point to each and every objectionable statement, it was specific enough to alert trial court as to what was objectionable in the records), writ granted, vacated w.r.m., 801 S.W.2d 528 (Tex. 1991), with R.R. Comm'n v. S. Pac. Co., 468 S.W.2d 125, 128 (Tex.Civ.App.-Austin) (questioning whether a party that offers voluminous records shifts the burden to the opposing party to cull out objectionable material), writ ref'd n.r.e., 471 S.W.2d 39 (Tex.1971). We further note that DFPS's offer of a 1,176 page case file as a single exhibit certainly contributed to the difficulties that all parties and the trial court apparently had in resolving the issue of the admissibility of the documents.
[8] The assessment was later admitted without objection during the testimony of the therapist who performed the assessment.
[9] See note 1 supra.
[10] It is likely that certain statements contained within the home study constituted an additional level of hearsay, since they recount what the contractor was told by the couple subject to the study, as well as by others. See, e.g., All Saints Episcopal Hosp., 791 S.W.2d at 322-23 (holding that social worker's facility investigation report was admissible as a public record but statements from parents contained in the report were not admissible). However, these statements have no apparent relevance to the issues in the case before us, so we will not discuss their admissibility in detail. We further note that Mustofa did not specifically object to these statements.
[11] The statements contained additional hearsay in that Stacey recounted statements made by J.J.'s school counselor, and LaChance recounted statements made by one of her own daughters as well as by Stacey.
[12] Stacey's statement details a conversation she had with her nine-year-old daughter. LaChance's statement details statements made by J.J. while J.J. was playing with LaChance's daughters. There was no evidence or even a suggestion that Stacey or LaChance was an employee or representative of DFPS at the time the statements were made or at any time.
[13] The P.A. stated in the protocol that her findings did not rule out sexual abuse and were consistent with the outcry statements and the time elapsed. She also noted that J.J. hid under a desk during part of the interview and appeared to have a "flashback," which involved screaming and crying, during the examination.
[14] On the protocol, in the information blanks following the question "Law enforcement officer involved?" the P.A. listed an Arlington Police Department detective and a CPS case-worker. In the blank following the question "Child referred by?" the P.A. wrote "Fam. Med.Leah Fanuil (SW)." The document does not give an indication as to just what these answers mean. Although we generally make reasonable inferences in favor of a trial court's ruling, there is not enough information on the face of the form to support a conclusion that the ABC Center or the P.A. completed the protocol as a representative of DFPS.
[15] We interpret Mustofa's attack on the warrant as encompassing the attached affidavit as well. See note 7 supra.
[16] While it is true that the affidavit purports to set forth statements made by a CPS employee to the Arlington police officer who drafted the affidavit, the business record exception generally cannot be established on the face of the document itself but requires live testimony or an affidavit from a witness shown to be qualified. See State v. Foltin, 930 S.W.2d 270, 272-73 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Lilly was the only witness offered by DFPS in this regard, and she is not the CPS employee whose statements appear in the Arlington arrest affidavit.
[17] It should also be noted that even if the documents were admissible under the public records exception, this would suffice for getting past only the first level of hearsay. See Corrales v. Dept. of Family & Protective Servs., 155 S.W.3d 478, 486 (Tex.App.-El Paso 2004, no pet.) (holding that while a police officer's factual findings in a police report may qualify as a public record, the statements of witnesses in the report would not) (citing Kratz v. Exxon Corp., 890 S.W.2d 899, 905 & n. 5 (Tex.App.-El Paso 1994, no writ)). As discussed above, each of the documents at issue contained more than one level of hearsay.
[18] Additionally, Mustofa argues that the trial court erred in admitting J.J.'s statements without requiring the testimony of the individuals to whom the statements were made. Because of our resolution of the contention made above, we need not address this additional argument.
[19] As mentioned above, Stacey's and LaChance's statements each contained at least two levels of hearsay: they were out-of-court statements by Stacey and LaChance relating out-of-court statements by J.J., among others. They were thus inadmissible if either level was not admissible under an exception to the hearsay rule. See TEX.R. EVID. 805.
[20] Section 104.006 provides:

In a suit affecting the parent-child relationship, a statement made by a child 12 years of age or younger that describes alleged abuse against the child, without regard to whether the statement is otherwise inadmissible as hearsay, is admissible as evidence if, in a hearing conducted outside the presence of the jury, the court finds that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability and:
(1) the child testifies or is available to testify at the proceeding in court or in any other manner provided for by law; or
(2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.
TEX. FAM.CODE ANN. § 104.006.
[21] Although Mustofa's section 104.006 response did not expressly state a hearsay objection, it is clear from the context that this was the basis for his objection to admission of the statements. As noted above, Mustofa had previously filed a written hearsay objection to Deible's report. When it was raised in a pretrial hearing, the judge stated that she was going to deny the objection at that time but would consider it when the evidence was presented for admission. DFPS's section 104.006 motion, in effect, presented J.J.'s statements for admission into evidence. Thus, the proceedings on that motion would have been the time for the judge to consider Mustofa's earlier hearsay objection, as the judge promised. Indeed, the judge stated that she would entertain the hearsay objections individually and considered the section 104.006 issue in the same hearing. At the conclusion of those proceedings, the court admitted "any outcry statements made by [J.J.] to the caseworker." Thus, the trial court implicitly overruled Mustofa's hearsay objection. Furthermore, the very point of DFPS's motion under section 104.006 was the admission of evidence that might otherwise be inadmissible hearsay. See TEX. FAM.CODE ANN. § 104.006; In re K.L., 91 S.W.3d at 15.
[22] In her testimony, Stacey largely denied the accuracy of J.J.'s allegations against Mustofa.
[23] According to the report, J.J. was shown a drawing of two stick figures, one with a heart above it and the other with a star above it. She was asked which one was true, and she responded that the one with the heart above it was correct. There is no explanation in the record as to what J.J.'s response might indicate.
[24] The dissent concludes that Mustofa failed to preserve error in relation to J.J.'s statements as contained in Deible's report. The dissent acknowledges, however, that (1) Mustofa filed a written hearsay objection to Deible's report, (2) the trial judge indicated that she would consider each objection when the objected-to evidence was offered, (3) DFPS moved for the admission of J.J.'s statements to Dollar under section 104.006, (4) Mustofa filed a written response objecting to admission of the statements based on their unreliability, (5) the trial court held a hearing regarding the reliability of the statements, and (6) the trial court admitted the statements. Nonetheless, the dissent would hold that because Mustofa did not specifically mention that the statements to caseworker Dollar were contained in caseworker Deible's report, Mustofa failed to preserve error in the admission of the statements. We agree with the dissent that Mustofa's presentation of this issue in the trial court was not a model for preservation of error. See n. 7 supra. It is clear, however, that Mustofa apprised the trial court of the basis of his objection to the statements. Compare In re K.C.P., 142 S.W.3d at 578-79 (holding that although objections to business records were "somewhat imprecise," they were sufficient to bring the issue to the trial court's attention), and All Saints Episcopal Hosp., 791 S.W.2d at 323 (holding that although objection to records did not specifically point to each and every objectionable statement, it was specific enough to alert trial court as to what was objectionable in the records), with R.R. Comm'n, 468 S.W.2d at 128 (questioning whether a party that offers voluminous records shifts the burden to the opposing party to cull out objectionable material). The trial court ruled that the statements were admissible. It is inconceivable that had Mustofa's counsel said the words "Deible report" during the section 104.006 proceedingsas the dissent says counsel should havethat this would have had any impact on the judge's ruling.
[25] This analysis is to some degree similar to the analysis undertaken when a proponent of excluded and allegedly cumulative evidence complains on appeal. See Rodriguez v. State, 926 S.W.2d 379, 381-82 (Tex.App.-San Antonio 1996, no writ) (comparing the two sets of analyses). In that context, the mere fact that the same or similar evidence may have already been introduced is not necessarily decisive. Rather, the reviewing court must consider whether the excluded evidence would have added substantial weight to the complainant's case. See In re N.R.C., 94 S.W.3d 799, 807 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); Sims v. Brackett, 885 S.W.2d 450, 454 (Tex.App.-Corpus Christi 1994, writ denied). Of course, under either analysis, the ultimate issue remains the same: whether the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.
[26] It is unclear whether the context of this question was solely limited to the time when E.A.K. was taken from his mother's custody. However, it is a revealing answer regardless of specific context.
[27] It should be noted that during a prolonged period of time, Mustofa was prevented from taking E.A.K. from Stacey due to the ongoing sexual abuse investigation; a fact acknowledged by DFPS counsel in closing. Additionally, counsel admitted that there was very little evidence introduced regarding Mustofa's ability to support E.A.K. during the relevant time period.
[28] The dissent concludes that the trial court's hearsay errors were harmless because the trial court did not err in admitting the CPS caseworker's report, which included J.J.'s outcry statements. Because we hold above that the trial court indeed did err in admitting the hearsay statements contained in the report, we respectfully disagree with the dissent's harm analysis.
[29] In issues three through seven, Mustofa also attacks the factual sufficiency of the evidence. However, because a holding of factual insufficiency would result only in a reverse and remandthe same outcome as our determination above that Mustofa was harmed by the trial court's evidentiary errorswe need not undertake a factual sufficiency analysis.
[30] Mustofa also presented evidence that he loved E.A.K., had bonded with him, helped support him, and was caring and loving toward him, and that he, Mustofa, had attended parenting classes. Mustofa additionally testified that he would never harm E.A.K. However, although relevant to the jury's deliberations, such evidence did not directly refute the evidence of sexual abuse and thus is not relevant to our legal sufficiency analysis.
[1] Child Protective Services is a division of the Texas Department of Family and Protective Services, formerly known as the Texas Department of Protective and Regulatory Services. Although the documents in this record refer to CPS, Texas Department of Protective and Regulatory Services, and the Texas Department of Family and Protective Services, for the sake of clarity, this opinion uses only the term "CPS."
[2] In his written objections, Khandokar also objected to the Deible Report to the extent that it contains "extraneous handwritten notations." Under the same analysis applied in this section, Khandokar did not preserve error as to this objection. Khandokar also objected to the introduction of the Deible Report unless Deible was present to testify as to the authenticity of the documents. On appeal, Khandokar has not asserted that the trial court abused its discretion in overruling these objections. Furthermore, the majority opinion does not address these objections.
[3] The majority asserts that, by these words, the trial court indicated it would consider Khandokar's objection when the evidence was presented for admission. See ante at p. 146 n. 21. The majority states that CPS presented Deible's description of J.J.'s statements to Dollar for admission immediately after this statement by the trial court when it presented its motion under section 104.006. This assertion is not supported by the record. The trial court indicated here that it would not admit any documents until after CPS put on business-records testimony, and no such testimony was presented during the hearing on the section 104.006 motion. As discussed below, in this motion CPS did not seek the admission of this description, and in any event, the trial court did not grant the motion.
[4] On appeal, Khandokar asserts that the trial court's reference to a "caseworker" is a reference to Jennifer Deible. This is not a reasonable interpretation. No reference was made to Deible in CPS's motion or in Khandokar's response. The motion and testimony at the hearing indicated that CPS caseworker Dollar took a videotaped statement from J.J. regarding her sexual-abuse allegations against Khandokar. There is no indication in the record that J.J. ever made any outcry statements to Deible.
[5] The majority concludes that the trial court abused its discretion in finding reliability and in admitting the Deible Report under section 104.006 of the Texas Family Code. Although this statute might provide one possible basis for admitting the Deible Report, CPS is not required to satisfy section 104.006 to have the Deible Report admitted into evidence. A review of the trial court record shows that the trial court did not admit the Deible Report into evidence under section 104.006 of the Texas Family Code. Therefore, the trial court could not have erred in so ruling.
[6] The majority asserts that the trial court admitted part of Petitioner's Exhibit 1 (the part of the Deible Report in which Deible describes J.J.'s statements to Dollar) into evidence two days before the trial began. However, on the first day of trial, CPS offered into evidence this entire exhibit, including the part the majority claims the trial court already had admitted. The trial court ruled on this offer and admitted almost all of this exhibit, including the part that describes J.J.'s statements to Dollar. Neither the parties nor the trial court mentioned or implied in any way that any part of Petitioner's Exhibit 1 already had been admitted into evidence. At the hearing two days before trial, the trial court did not say that it was admitting this part of Petitioner's Exhibit 1. The actions of the parties and the court confirm that the trial court did not do so.
[7] Khandokar indicates in his appellate brief that the trial court refused to allow him to cross-examine the records-custodian witness as to all the parts of Petitioner's Exhibit 1. The record shows otherwise. The trial court did not prevent Khandokar from cross-examining this witness or from voicing whatever objections he might have had to any part of Petitioner's Exhibit 1. Although this exhibit is voluminous, it should be noted that at no time did Khandokar object that this exhibit was too lengthy, unmanageable, or cumbersome or that he did not have sufficient time to prepare or present any objections he had to the many parts of this exhibit.
[8] Furthermore, no party asserts that the trial court reversibly erred by admitting multiple copies of the Deible Report, and this contention would lack merit.
[9] The majority also errs in addressing an argument that is not presented in Khandokar's appellate brief. The majority concludes that Khandokar attacks the admission of the Deible Report in an argument under his second issue. In presenting this issue, Khandokar asserts the trial court abused its discretion in admitting hearsay statements by J.J. without requiring testimony of the individuals to whom the statements were made. Although the majority does not address this argument, the record shows that Khandokar did not voice this complaint in the trial court before the trial court admitted Petitioner's Exhibit 1 into evidence. Therefore, Khandokar did not preserve error as to this argument. See TEX. R.APP. P. 33.1(a); Bosch v. Dallas Gen. Life Ins. Co., No. 14-04-00661-CV, 2005 WL 757254, at *6 (Tex.App.-Houston [14th Dist.] Apr. 5, 2005, no pet.) (mem op.). Under his second issue, Khandokar also argues that the testimony at trial showed that J.J.'s statements were unreliable and should not have been admitted under section 104.006. However, this argument fails because, in reviewing the trial court's admission of Petitioner's Exhibit 1, we cannot consider testimony given after the trial court admitted this exhibit. See Methodist Hops. of Dallas v. Tall, 972 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1998, no pet.) (stating that "[i]t is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted"); Keck v. First City Nat'l Bank of Houston, 731 S.W.2d 699, 700 (Tex. App.-Houston [14th Dist.] 1987, no writ) (stating that appellate court's determination of whether trial court erred in making a ruling is determined based on the trial court record that existed at the time of the trial court's ruling). Although we must apply the briefing requirements reasonably and liberally, Khandokar still must put forth some specific argument, along with analysis showing that the record and the law support that argument. See San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Even under a liberal interpretation, Khandokar's brief does not contain specific argument and analysis in support of the proposition that the trial court reversibly erred in admitting into evidence inadmissible hearsay contained in the Deible Report. See id.