# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00638-CV

**J.H., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
### NO. 09-2448-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

J.H. appeals the trial court's order terminating his parental rights to his children, A.H. and D.H., following a jury trial.[1] *See* Tex. Fam. Code Ann. §§ 161.001, 263.405 (West 2008 & Supp. 2010). He contends that he was denied a fair trial by the trial court's refusal to exclude evidence of sexual abuse allegations. The allegations were made against him in prior referrals to appellee the Texas Department of Family and Protective Services. He also challenges the conservatorship order and the factual sufficiency of the evidence to support the jury's finding that termination of his parental rights was in the best interest of the children. For the reasons that follow, we affirm the trial court's order terminating J.H.'s parental rights.

---

[1] We use aliases to refer to appellant and his children. *See* Tex. R. App. P. 9.8.

## BACKGROUND

The Department's first involvement with appellant and his children was in 2003. At that time, appellant was married to the mother of D.H., D.H. was an infant, and A.H. was not yet born. The Department received a referral that included allegations by the mother that appellant had sexually abused D.H. During its investigation, the Department became concerned with the mother's mental health. Shortly after the Department closed the case, one of the children's great aunts obtained legal custody of D.H.

The Department's next involvement with the family was in November 2005. By this time, A.H. was a few months old, and the great aunt had returned D.H. to live with appellant and the mother. The mother checked into a psychiatric hospital and was having "violent" thoughts. Her thoughts included leaving the children in the bathtub and "hitting" them in the face. The mother also alleged that appellant had sexually abused A.H. After an investigation, the Department offered services in a Family Based Safety Services (FBSS) case but "ruled out" the mother's allegations against appellant.

A few years later, the Department again became involved with the family during a divorce proceeding between appellant and the mother. After a hearing in that proceeding, the trial court ordered the children into the care of the Department. The children were initially placed in foster care but later placed with one of the children's great aunts. At the close of the case in July 2007, the mother relinquished her parental rights, and appellant was given managing conservatorship of his children. During the next year, appellant and his children moved to Utah,

Idaho, and then back to Texas. After their return to Texas, appellant and the children began living with the mother again.

The Department's next involvement with the family forms the basis of this case. The Department received a referral in March 2008 concerning neglectful supervision of the children. The referral reported that A.H. and D.H., then ages two and five, were "locked" outside of their apartment for over an hour at a time and were "wandering around" the apartment complex unsupervised. After an investigation, the Department opened another FBSS case and obtained a court order to require appellant to participate in services. The Department and appellant entered into a safety plan that the mother was not to be left alone with either child. D.H. and the mother, however, continued to be left alone together. Appellant also took his children to Wyoming to live with his mother for a few months, but he brought them back after a family team meeting with the Department. At the meeting, it was decided that the children would return to Texas and live with their maternal aunt, Laurie Boyd, and appellant would participate in services provided by the Department. As planned, the children returned from Wyoming in June 2008 and began living with Boyd, and appellant participated in services. In February 2009, appellant and the mother were involved in a domestic violence incident and separated. After the separation, appellant did not provide an address to the Department, lost his job, and missed scheduled services and visits with his children. He also moved numerous times, including residing at a homeless shelter and with friends, and was arrested for public intoxication and failure to identify. After his arrest, he spent several weeks in jail.

The Department eventually decided to seek termination of appellant's parental rights, filing a petition for conservatorship and termination in August 2009. The trial court appointed the Department temporary conservator of the children and ordered appellant to undertake and complete specified services. Shortly thereafter, the Department removed the children from Boyd's home and placed them in foster care. The Department had determined that Boyd was "spanking" the children in violation of Department policy. The Department, however, returned the children to Boyd in June 2010, and they remained in her care at the time of trial. The four-day jury trial occurred in August 2010. By the time of trial, appellant had not completed the court-ordered services, but he had obtained a job, a car, and housing. He was engaged and sharing a fourplex with his fiancee.

The witnesses at trial included appellant, Boyd, one of the children's maternal great aunts, appellant's fiancee, his stepfather, Department supervisors and caseworkers, professional counselors, social workers, and a psychologist. The family members testified concerning their relationships with each other and the children, their contacts and interactions with the Department, and their beliefs as to what would be best for the children going forward. Their testimony was consistent that there was and had been disagreement and tension between members of the mother's family and appellant as to how best to take care of the children. Appellant and Boyd also testified about services provided by the Department and the children's current placement with Boyd.

Boyd testified that the children were doing well in her care, that she had completed the services required by the Department, that she hoped to adopt the children, and that she intended for appellant to remain in the children's lives if she was allowed to adopt them. Appellant agreed that Boyd provided the children a stable home, but he testified that the children's best interest was

4

to live with him. He was prepared to take the children in three to six months but testified that he would need to do "stress management" before they were returned to him. Appellant's stepfather also testified that he did not have concerns with the children returning to live with appellant. Appellant's fiancee testified that she did not have a relationship with the children but that she hoped to have one in the future.

The Department's employees, the professional counselors, and the social workers testified concerning the Department's history and involvement with the family and appellant. Their testimony was consistent that the Department had provided numerous services to appellant, Boyd, and the children. Among the services, the children were receiving speech therapy and counseling, and appellant had a psychological evaluation. The psychologist who performed the evaluation in October 2009 testified that the tests showed that appellant was in the "mentally retarded" or "borderline" range, was "antisocial and paranoid," and that he had "bipolar disorder." The psychologist opined that people in appellant's category are capable of parenting if they are in a supportive environment.

The trial court submitted the case to the jury and the jury found that appellant's parental rights should be terminated for both children. In accordance with the jury's findings, the trial court entered an order terminating appellant's parental rights and appointing the Department permanent managing conservator. Appellant filed a motion for new trial, a statement of points on appeal, and a notice of appeal. After a hearing, the trial court denied appellant's motion for new trial but found him indigent and his appeal not frivolous. *See* Tex. Fam. Code Ann. § 263.405(d) (West 2008). This appeal followed.

5

**ANALYSIS**

To terminate parental rights, the Department has the burden to prove one of the predicate grounds in section 161.001(1) of the family code and that termination is in the best interest of the child. *See id*. § 161.001(1), (2) (West Supp. 2010); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Appellant does not challenge that the evidence was sufficient to support that one of the predicate grounds submitted to the jury supported termination. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O).[2] His challenge is to the factual sufficiency of the evidence to support the best interest finding. *Id.* § 161.001(2). He also challenges the conservatorship order and contends that he did not receive a fair trial because the trial court admitted evidence of false sexual abuse allegations against him. We begin with appellant's evidentiary challenge.

*Evidence of Sexual Abuse Allegations*

In his first issue, appellant challenges the trial court's admission of evidence concerning sexual abuse allegations made against him in prior referrals to the Department in November 2003, February 2006, and March 2006. The evidence was that the mother and maternal

---

[2] The jury found by clear and convincing evidence that appellant had committed one or more of the following actions: (i) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;" (ii) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;" or (iii) "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for the abuse or neglect of the child." *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West Supp. 2010).

grandmother had made the complained-of allegations, but that the Department "ruled out" or found the allegations unconfirmed.  Appellant contends that the admission of the sexual abuse evidence was overly prejudicial and that, therefore, the trial court's failure to exclude the evidence denied him the right to a fair trial.  *See* Tex. R. Evid. 401 (relevant evidence defined), 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice").  The Department contends that it presented the evidence of the allegations solely to provide background for the Department's involvement with the family.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).  A trial court abuses its discretion when it acts without regard to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  Additionally, to be entitled to reversal due to the erroneous admission of evidence, an appellant must show that the error probably resulted in an improper judgment.  Tex. R. App. P. 44.1; *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).  In conducting a harm analysis, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted.  *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *In re C.R.*, 263 S.W.3d 368, 370 (Tex. App.—Dallas 2008, no pet.).

Appellant primarily relies upon *In re E.A.K.*, 192 S.W.3d 133 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), for his assertion that the trial court erred by admitting the evidence of sexual abuse allegations and that the error resulted in the rendition of an improper judgment.  In that case, our sister court reversed and remanded a termination order, finding harmful error by the

trial court's admission of evidence that the parent sexually abused his child. *See id.* at 150. In concluding that the jury's finding probably turned on its consideration of the erroneously admitted evidence, the court noted that "it [was] clear from the record that [the Department] emphasized the sexual abuse allegations throughout trial as the primary ground for termination." *See id.* at 149-50. In contrast, the Department in the present case did not seek to terminate appellant's parental rights on the ground that he had sexually abused his children, and the Department did not contend that the allegations were true.

Further, unlike the facts in *In re E.A.K.*, the trial court here gave the jury the following limiting instruction before the first witness testified:

> Some evidence is going to be presented through the next witness that's only admitted for a limited purpose. And so this instruction explains the limited purpose for which it is admitted. I'll remind you and instruct you that you are only to consider it for that purpose. Statements made by the mother and maternal grandmother are about to be presented. Those statements relate to proper allegations and referrals to CPS. They are only offered to show who made the allegations and how persons involved in the case reacted to those statements. These statements are not evidence that [appellant] actually engaged in any of the alleged conduct. They are not to be considered as evidence indicating that [appellant] engaged in any such conduct or any similar actions. These statements are not to be considered for any other purpose than the very limited scope for which they are entered.

The trial court expressly instructed the jury then not to consider allegations by the mother or maternal grandmother as evidence that appellant engaged in the alleged conduct. On this record, we cannot conclude that the trial court abused its discretion in allowing the complained-of evidence with the limiting instruction. We overrule appellant's first issue.

8

***Best Interest Finding***

In his second issue, appellant challenges the factual sufficiency of the evidence to support the finding that termination was in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The standard of proof to terminate parental rights is the clear and convincing standard. Tex. Fam. Code Ann. § 161.206(a) (West 2008); *see In re J.F.C.*, 96 S.W.3d at 263. The clear and convincing standard is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.,* 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see also* Tex. Fam. Code Ann. § 101.007 (West 2008). In reviewing the factual sufficiency of the evidence to support a termination finding, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266 (quoting *In re C.H.*, 89 S.W.3d at 25); *see also In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency standard of review in appeals from termination orders discussed). In light of the entire record, evidence is factually insufficient if the factfinder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the factfinder could not have formed a firm belief or conviction. *In re J.F.C.*, 96 S.W.3d at 266.

Factors that courts consider in assessing the best interest of a child include: (i) stability of the home or proposed placement, (ii) parental abilities, (iii) the emotional and physical needs of the child, (iv) the plans for the child by the individual or agency seeking custody,

(v) conduct by a parent showing parent-child relationship not proper, (vi) any excuses for the parent's conduct. *Holley*, 544 S.W.2d at 372; *see also* Tex. Fam. Code Ann. § 263.307 (West 2008) (listing factors that court should consider in determining best interest of child). No one factor is controlling, and analysis of a single factor may be adequate in a particular factual situation. *See Pruitt v. Texas Dep't of Family & Protective Servs.*, No. 10-00089-CV, 2010 Tex. App. LEXIS 10272, at *22-23 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.).

Appellant presented evidence that it was not in the best interest of the children to terminate his parental rights. Appellant and other witnesses testified that appellant loved his children, that he wanted them to live with him, and that he made progress and completed the court-ordered services to the best of his abilities. At the time of trial, he had obtained a job, a car, and a place to live. The evidence also showed that appellant was given managing conservatorship of the children in July 2007, just a few years before this trial. Numerous witnesses, however, testified that appellant had been unable to provide a stable home for his children or to meet their physical and emotional needs during most of their lives. In the two year period before the trial, appellant moved approximately fifteen times, including living in a homeless shelter and with friends. He also failed to provide an address to the Department during an extended period of time, and he did not provide consistent financial support for his children's care. Further, at the time of the trial, appellant had missed scheduled visits with his children, and he testified that he was not ready for the children to come live with him for three to six months. He also testified that he would need to do "stress management" before his children returned to live with him.

The jury could have credited this evidence, as well as the evidence of the Department's extensive and continued involvement with appellant and his children, the psychological evaluation that raised concerns about appellant's parental abilities, and the children's current placement. Although the Department removed the children from Boyd's care during the pendency of the case, a caseworker testified that the Department removed the children out of an "abundance of caution." Boyd completed all services required by the Department within a few months, and she had the financial resources and ability to take care of the children, including continuing speech therapy and counseling. Boyd further testified that she hoped to adopt the children and to allow appellant to be a part of their lives going forward. Appellant testified consistently that Boyd was stable, that she had a stable job and living conditions, and that "[t]here's nothing wrong with her place."

In light of the entire record, a reasonable factfinder could have resolved all disputed evidence in the Department's favor and could have reasonably formed a firm belief or conviction that termination was in the best interest of the children. *See In re J.F.C.*, 96 S.W.3d at 266. We conclude that the evidence was factually sufficient to support the best interest finding and overrule appellant's second issue.

### Conservatorship Order

In his third issue, appellant urges that, in the event that this Court reverses the termination order, that this Court should reverse the trial court's appointment of the Department as the children's managing conservator. Because we affirm the termination order, we have no grounds

on which to reverse the conservatorship order.  See *Pruitt*, 2010 Tex. App. LEXIS 10272, at *28.

We overrule appellant's third issue.

## CONCLUSION

For these reasons, we affirm the trial court's order of termination.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   June 9, 2011