

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00036-CV
_____

JAVIER AGUILAR, APPELLANT

V.

WELLS FARGO BANK, N.A., APPELLEE

On Appeal from the 348th District Court
Tarrant County, Texas[1]
Trial Court No. 348-303129-18, Honorable Megan Fahey, Presiding

January 29, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

In this credit card debt collection case, appellant Javier Aguilar appeals the trial court's decision granting summary judgment in favor of appellee Wells Fargo Bank, N.A. We affirm in part and reverse in part.

_____

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

## Background

Wells Fargo sued Aguilar to recover $6,637.75, the unpaid balance it claimed was owed on a credit card issued to him. The bank asserted two causes of action: breach of contract and account stated. It moved for summary judgment on its breach of contract claim. Wells Fargo supported its motion with Aguilar's deposition testimony and affidavits from Thomas Sellers, Wells Fargo's attorney, and Kaitlyn Smith, a loan adjustment manager for Wells Fargo, who attached more than four hundred pages of Wells Fargo's business records to her affidavit.

Aguilar filed a response objecting to the summary judgment evidence and arguing that Wells Fargo failed to establish the amount due on its claim. Aguilar offered excerpts from Smith's deposition in support of his response. Wells Fargo then filed objections to Aguilar's offer of evidence under Texas Rule of Evidence 107, the Rule of Optional Completeness. Contending that Aguilar had provided only out-of-context excerpts, the bank offered Smith's deposition into evidence. Wells Fargo's objections, along with the entire Smith deposition transcript, were filed on October 22, 2019, two days before the hearing on its motion for summary judgment.

At the hearing on October 24, Aguilar objected that the deposition was not timely filed and should not be considered. The trial court overruled this objection. In addition, the trial court considered Aguilar's specific objections to Smith's affidavit, which included objections that the affidavit was not made on personal knowledge, was conclusory, and failed to authenticate business records. These objections were also overruled. The trial

court then entered summary judgment for Wells Fargo. Aguilar timely perfected this appeal.

Analysis

On appeal, Aguilar raises issues regarding the trial court's admission of evidence, its grant of summary judgment, and its award of appellate attorney's fees.

Admission of Evidence

In his first issue, Aguilar argues that the trial court abused its discretion in admitting the entire Smith deposition. He contends that, because Wells Fargo did not seek leave of court to file the evidence late, the evidence should not have been considered by the trial court.

The admission of evidence is committed to the trial court's sound discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). Even if a trial court errs by improperly admitting evidence, a party seeking to reverse a judgment on this basis must show that the error probably caused the rendition of an improper judgment. *Id.* To determine if the error of the trial court was harmful, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Even if we were to agree, for the sake of argument, that the trial court erred in admitting the Smith deposition, Aguilar offers no explanation as to how the admission of the evidence was harmful. *See* TEX. R. APP. P. 44.1 (prohibiting reversal of judgment in

the absence of harm).  Because Aguilar has failed to demonstrate that Smith's deposition testimony probably caused the rendition of an improper judgment, we conclude that the admission of the deposition, even if erroneous, did not amount to harmful error.  *See Krell v. Smith*, No. 02-02-00417-CV, 2003 Tex. App. LEXIS 8091, at *4 (Tex. App.—Fort Worth Sept. 18, 2003, no pet.) (mem. op.) (per curiam) (holding that by failing to argue that she suffered harm as a result of trial court's exclusion of evidence, appellant failed to meet her burden of proof by presenting grounds for reversal on appeal).  Moreover, our review of the record does not compel us to conclude that the admission of Smith's deposition probably resulted in an improper judgment.  We overrule Aguilar's first issue.

In his second issue, Aguilar contends that the trial court abused its discretion in overruling his objections to the Smith affidavit.  Aguilar objected that the Smith affidavit was not made on personal knowledge, was conclusory, and failed to authenticate the attached business records.

To be competent summary judgment evidence, an affidavit must be based on personal knowledge, set forth facts admissible in evidence, and affirmatively show the affiant's competency to testify as to the matters stated therein.  TEX. R. CIV. P. 166a(f).

Smith's affidavit states, in part:

> I am employed as a Loan Adjustment Manager of Wells Fargo Bank, NA, and at all times material hereto, authorized to make this Affidavit on behalf of Wells Fargo Bank, NA . . . .  In regular performance of my job functions I have access to the business records maintained by Wells Fargo for the purpose of servicing its credit card portfolio.  These records are made at or near the time by, or from information provided or transmitted by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Wells Fargo.  It is the regular practice of Wells Fargo's credit card businesses to

make these records. In connection with making this affidavit, I have acquired personal knowledge of the matters stated herein by personally examining these business records. The exhibits attached to this Affidavit are true and correct copies of the business records of Wells Fargo.

I am fully competent in all respects to make this Affidavit, having personal knowledge of all facts stated herein, and state that they are true and correct.

Rule 166a(f)'s personal knowledge requirement "is satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit." *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied). In this case, Smith stated that the facts set forth in her affidavit were within her personal knowledge and she identified herself as a Wells Fargo loan adjustment manager who had personally examined Wells Fargo's records of Aguilar's account. We conclude that Smith established how she possessed knowledge of the matters contained in her affidavit. *See id.* Because the factual assertions in Smith's affidavit demonstrate her personal knowledge and competence to testify, the trial court did not err in overruling Aguilar's objection on that basis.

Aguilar also objected on the basis that certain statements in Smith's affidavit were conclusory. He specifically identifies the following statements in the affidavit as objectionable:

- "Aguilar[,] for value received, made, executed and delivered to Plaintiff a Wells Fargo Consumer Credit Card Customer Agreement and Disclosure Statement . . . Evidencing a Line of Credit"
- "Aguilar was the owner and holder of a Wells Fargo account that enabled [him] to charge items to the Wells Fargo account which forms the basis of this suit"

5

- "[t]he Agreement provided for [Aguilar] to make payments to [Wells Fargo]"

- "[Aguilar] defaulted under the terms of the Agreement, by failing and refusing to make payments as required under the terms of the Agreement"

An affidavit containing conclusory statements that fail to provide the underlying facts to support the conclusions is not proper summary judgment evidence. *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g). Thus, an affidavit that consists merely of sworn repetitions of allegations in a pleading or simply paraphrases statutory language is conclusory and lacks probative force. *See Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.); *Nichols v. Lightle*, 153 S.W.3d 563, 570-71 (Tex. App.—Amarillo 2004, pet. denied). However, logical conclusions based on stated underlying facts within the affidavit or attachments thereto are not improper conclusions.

Upon reviewing the challenged statements in Smith's affidavit, we determine that they are not conclusory. Rather, the statements are logical conclusions based on the factual foundation set forth in Smith's affidavit concerning Aguilar's account and the information contained within the attached Wells Fargo account documents, including the customer agreement and multiple monthly statements. Thus, Aguilar's complaint that these statements are conclusory is without merit.

Finally, Aguilar objected to Smith's affidavit on the basis that it failed to satisfy the requirements for the business records exception to the hearsay rule, Texas Rule of Evidence 803(6). The business records exception to the hearsay rule has four requirements: (1) the records were made in the course of regularly conducted business

6

activity; (2) it was the regular practice of the business activity to make the records; (3) the records were made at or near the time of the event that they memorialize; and (4) the records were made by a person with knowledge who was acting in the regular course of business. *In re E.A.K.*, 192 S.W.3d 133, 141 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To establish that the records satisfy these requirements and to render them self-authenticated, the proponent of the evidence at trial may present with the records an affidavit of the custodian of records or a "qualified witness." TEX. R. EVID. 803(6), 902(10). To be a "qualified witness," the affiant must have personal knowledge of the business's recordkeeping practices or of the facts contained within the business records. *In re E.A.K.*, 192 S.W.3d at 142; *Houston Shell & Concrete Co. v. Kingsley Constructors*, 987 S.W.2d 184, 186 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (Rule 803(6) does not require affiant to be creator of records, but affiant must demonstrate she or others in her company know of events in records). "Determining admissibility of business records affidavits involves deciding whether 'the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'" *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 246 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on reh'g) (citing TEX. R. EVID. 803(6)).

Aguilar contends that nothing "shows how Kaitlin Smith knows anything about how any of the documents are originated or are accurate." However, Smith need not be personally involved in generating the records, or have personal knowledge of the information recorded therein, to be a qualified witness for purposes of a business records affidavit. *In re E.A.K.*, 192 S.W.3d at 142.

7

Smith's affidavit demonstrates that she has personal knowledge of how the Wells Fargo records were prepared, i.e., (1) they were made at or near the time by, or from information transmitted by, someone with knowledge of the activity and transactions reflected; (2) they were kept in the course of business activity regularly conducted by Wells Fargo; and (3) making the records was a regular practice of Wells Fargo's business. *See* TEX. R. EVID. 803(6). Therefore, the trial court could have reasonably concluded that she was qualified to be a sponsoring witness for the business records. We conclude that the trial court did not abuse its discretion by admitting the Wells Fargo account documents under the business records exception to the hearsay rule. We overrule Aguilar's objections to the admission of this evidence.

Summary Judgment

Aguilar's third issue claims that the trial court erred in granting summary judgment because (1) a fact issue exists regarding the amount due and (2) no agreement was proven as a matter of law.

Summary judgments are subject to de novo review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When we review a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

We first consider Aguilar's allegation that summary judgment was inappropriate because there is a fact issue regarding the amount due and owing on Aguilar's credit card account. As discussed above, Wells Fargo offered the affidavit of Smith, a Wells Fargo loan adjustment manager, in support of its motion for summary judgment. Smith averred

that the balance due and owing on Aguilar's account was $6,637.75. In addition, the business records attached to Smith's affidavit included nine years' worth of account statements showing transactions on Aguilar's account. The most recent statement reflected an account balance of $6,637.75. The business records also included letters to Aguilar from Wells Fargo and later, from a law firm representing Wells Fargo, stating that Aguilar's account balance was $6,637.75.

Aguilar did not produce any evidence disputing the veracity of Smith's statement, the monthly account statements, or the remaining account balance. Rather, Aguilar's counsel simply stated at the summary judgment hearing that Aguilar "took out the credit card, but he doesn't admit to the amount that is owed." Later, he argued, "He didn't pay all of the money back. But it's – there's nothing in here that gives you a sum certain that's credible summary judgment proof, and that's the problem." On appeal, Aguilar complains that the trial court acted unfairly by requesting that counsel for Wells Fargo direct the trial court to the evidence showing the final account balance.

Our review of the summary judgment evidence indicates that Smith's affidavit and supporting documents provide the necessary proof of the amount due on Aguilar's account. Further, we conclude that Aguilar failed to provide competent summary judgment evidence to raise a genuine issue of material fact as to the damages element of Wells Fargo's claim. Thus, the trial court did not err in granting summary judgment on this basis.

We next consider Aguilar's claim that no agreement was proven as a matter of law. Aguilar argues, "While there is some evidence of a credit card agreement of some kind,

9

there is no evidence proving the terms of any particular agreement, or Aguilar's intent to be bound by any particular agreement."

We reject Aguilar's contention. Wells Fargo's summary judgment evidence included copies of the Wells Fargo consumer credit card customer agreement, monthly billing statements to Aguilar showing charges and payments made on the account from February of 2008 to February of 2017, and notices of changes to account terms. The information and transactions reflected in Wells Fargo's documents supports a conclusion that Aguilar agreed to the terms of the Wells Fargo credit card agreement by accepting and using the credit card. Moreover, Aguilar's regular payments on the account over the nine-year period indicate that he understood his obligations to Wells Fargo. *See, e.g., Hinojosa v. Citibank (S.D.), N.A.*, No. 05-07-00059-CV, 2008 Tex. App. LEXIS 1532, at *7-8 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) (defendant's acceptance and use of card established existence of a contract as a matter of law in breach of contract action); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g) (use of credit card and payments on account demonstrated defendant understood her obligations; contract was formed even in absence of proof of manual delivery of agreement to defendant). Therefore, we find no error in the trial court's grant of summary judgment.

We overrule Aguilar's third issue.

Attorney's Fees

In its judgment, the trial court awarded Wells Fargo $5,000 in appellate attorney's fees in the event of an unsuccessful appeal by Aguilar to the court of appeals, and another

$5,000 in the event of his unsuccessful petition for review by the Texas Supreme Court. In Aguilar's fourth issue, he argues that Wells Fargo did not establish its entitlement to these contingent appellate fees.

Aguilar asserts that Wells Fargo offered "no evidence" to support the award of appellate attorney's fees. However, his argument is couched in terms of Wells Fargo's "failure to prove" his attorney's fees, and his prayer for relief requests that this Court reverse and remand the case. This inartful presentation of the issue makes it unclear whether Aguilar challenges the legal sufficiency or factual sufficiency of the evidence. *See Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 701 (Tex. App.—Dallas 2019, pet. denied) (explaining that remedy for "no evidence" challenge is to reverse and render, while remedy for factual sufficiency challenge is to reverse and remand). We will treat Aguilar's issue as one challenging the factual sufficiency of the evidence that supports the trial court's award of appellate attorney's fees.[2] *See North Park Terrace Apts. V, Ltd. v. Tarrant Appraisal Review Bd.*, No. 02-04-00119-CV, 2005 Tex. App. LEXIS 5650, at *2 (Tex. App.—Fort Worth July 21, 2005, no pet.) (mem. op.).

In our review, we follow the guidance of the Texas Supreme Court as set forth in *Yowell v. Granite Operating Co.*:

> When reviewing a trial court's award of attorneys' fees, we must ensure the record contains sufficient evidence to support such an award. The party seeking attorneys' fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded. If there is insufficient evidence in the record to uphold the trial court's award of those fees, we must reverse.

[2] Moreover, given that the evidence supporting the award, as set forth below, is more than a scintilla, Aguilar's argument as a legal insufficiency issue would fail.

11

*Yowell v. Granite Operating Co.*, No. 18-0841, 2020 Tex. LEXIS 425, at *35 (Tex. May 15, 2020) (internal citations omitted).

Contingent appellate fees "have not yet been incurred and thus must be projected based on expert opinion testimony." *Id.* at *37. In *Yowell*, the Texas Supreme Court explained that a party seeking to recover such fees must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* at *37-38.

In this case, Wells Fargo supported its request for attorney's fees with expert testimony in the form of an affidavit from its attorney, who testified to his qualifications, experience, and familiarity with the reasonable, usual, and customary attorney's fees charged in Tarrant County in litigation similar to the instant lawsuit. He testified to his hourly rate and the hourly rate of other associates and legal assistants. As to contingent appellate fees, he concluded that "$5,000.00 is reasonable and necessary in the event of an appeal to the Court of Appeals, and that the sum of an additional $5,000.00 is reasonable and necessary in the event a petition for review is sought in the Supreme Court of Texas." The attorney's affidavit was uncontroverted by Aguilar.

While the attorney's affidavit provides evidence of his and his colleagues' reasonable hourly rates, it does not include any other facts to support the reasonableness of the contingent appellate fees. For example, it lacks an estimate of the hours required in the event of an appeal or any description of the work that responding to such an appeal would entail. *See id.*, at *37-38 (requiring evidence of reasonable hourly rate and services party reasonably believes will be necessary to defend appeal).

12

Because the record does not provide the necessary details to support the trial court's awards of contingent appellate attorney's fees, we reverse the judgment as to those awards and remand to the trial court for a determination of such fees.

In his final issue, Aguilar argues that this Court must reverse the award of attorney's fees if we reverse the trial court's summary judgment. In light of our disposition of Aguilar's other issues, which affirm the judgment in favor of Wells Fargo, we overrule this issue. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the judgment as to the award of appellate attorney's fees and remand the case to the trial court for a determination of the amount Wells Fargo should recover as its reasonable and necessary attorney's fees on appeal. The remainder of the judgment is affirmed.

Judy C. Parker
Justice